In the Matter of the Application of The People of the State of New York, by George S. Van Schaick, as Superintendent of Insurance of the State of New York, for an Order to Take Possession of the Property and Rehabilitate the Title and Mortgage Guarantee Company of Buffalo. (Series " D " Reorganization.)

Frank T. Hines, as Administrator of the Veterans' Affairs, and Another, Appellants; George S. Van Schaick, Superintendent of Insurance of the State of New York, as Rehabilitator, etc., and Buffalo Series D Corporation and Others, Respondents.

Fourth Department, December 23, 1935.

*A. S. Thomson*, for the appellant Frank T. Hines, as administrator, etc.

*John H. Dominick*, for the appellant Edward M. Simon, as committee of the estates of Victor Haraczko and others, interested parties.

*David L. Landy*, for the respondent Buffalo Series D Corporation, and other respondents.

TAYLOR, J. The Title and Mortgage Guarantee Company of Buffalo, hereinafter called the Title Company, and its methods of doing business have been fully described and discussed in the opinion of the Court of Appeals in *Matter of People (Title & Mortgage Guarantee Co. of Buffalo)* (264 N. Y. 69). Representatives of certain incompetent and infant beneficiaries — committees, trustees and guardians — have purchased certificates of the Title

Company with the funds of their wards. Thereupon the beneficiaries of the various fiduciaries became creditors of the Title Company and the Title Company became, as to said beneficiaries, not a depositary but a borrower, a debtor (*op. cit.* at p. 88). The Title Company is in rehabilitation. Pursuant to the Schackno Act (Laws of 1933, chap. 745) the Supreme Court at Special Term has approved and declared binding upon all certificate holders in the Buffalo Series D Corporation, a plan for the reorganization of their mortgage investments. These particular certificates (Series D) had been issued by the Title Company and all the bonds and mortgages and the other assets of the Title Company constituting the security for them had been transferred to the Series D Corporation by the Title Company and the Superintendent of Insurance as rehabilitator for the Title Company. This is a proceeding brought by the Series D Corporation to obtain a determination as to rights of priority of payment, if any, as between various certificate holders in the Series D Corporation. The claims of priority rights of certain incompetent veterans and infant beneficiaries through their committees, trustees and guardians, asserted in this proceeding, have been denied at Special Term and appeals are before this court. The value of the securities transferred to the Series D Corporation is between $5,000,000 and $6,000,000 and the claims of the said veterans and infants, the subject of this appeal, aggregate approximately $37,000.

The representatives of the Series D Corporation claim at the outset that the record contains no evidence that the moneys paid by these appellants for certificates were received by the beneficiaries as compensation or insurance or pension awards. The importance of that claim, if any, must yield to the evident desire of all parties concerned that the merits of these claims as to priority be passed on now.

According to a certain " Statement Regarding Claims " found in the record, the seventeen certificates involved in this appeal were all issued to committees, guardians or trustees of incompetents or infants. All but four of them were issued after July 1, 1929, the date when section 1384-1 of article 81-A of the Civil Practice Act went into effect. This is the section regulating the investment of funds of incompetent veterans and infant wards of the United States Veterans' Bureau. However, in view of the conclusion we reach, we do not deem it necessary to pass on the question whether the provision in section 1384-1 requiring guardians to invest, among other things " in bonds and mortgages on unincumbered real property in this State worth fifty per centum more than the amount loaned thereon " gives a right to invest in shares or parts of such

bonds and mortgages. Section 21 of the Personal Property Law, as it has stood since its amendment by section 2 of chapter 544 of the Laws of 1918, has confined permissible investments of all trust funds to " the same kind of securities as those in which savings banks of this State are by law authorized to invest the money deposited therein * * * and in bonds and mortgages on unincumbered real property in this State worth fifty per centum more than the amount loaned thereon, and in shares or parts of such bonds and mortgages." The certificates purchased from the Title Company by the beneficiaries represented by appellants were not securities lawfully purchasable by savings banks as investments (Banking Law, § 239) nor were they bonds or mortgages or shares or parts of bonds or mortgages. The holders of them, prior to default, acquired " no rights in the mortgages other or greater than the rights of a holder of collateral security and the guaranty company retains at least the rights of an owner who has cumbered his title with a lien." (*Matter of People* [*Title & Mortgage Guarantee Co. of Buffalo*], *supra*, p. 88.) After the Title Company ceased to do business the rights which remained in the certificate holders " were to collect upon the mortgages and to claim the deficiency from the company " (*op. cit.* p. 90). The certificate holders' investments were the equivalent of notes of the Title Company, collaterally secured by the bonds and mortgages and nothing more (*op. cit.*, and *Matter of Stupack*, 154 Misc. 759, and cases cited at p. 765.) The fact that the Title Company had the right to withdraw deposited bonds and mortgages and substitute others for them and that certificate holders might be paid in the order in which they might demand payment after three years, is also to be taken into consideration in this connection. Whatever may be found to the contrary of this view in the opinion in *Matter of Nix* (154 Misc. 61) does not meet with our approval.

The serious question confronting us on this appeal is whether the acceptance of the funds of these beneficiaries by the Title Company constituted the company a constructive trustee and if so whether the appellants are entitled to preferential payment in full. So far as scienter is concerned, we proceed upon the assumption that the wording of the certificates indicates that the Title Company was advised that the investments being made by these fiduciaries were prohibited by statute.

One who has acquired property, real or personal, knowing that it is trust property and understanding the limitations upon the authority of the trustee takes the property incumbered with the trust and subject to all limitations, through however many hands it may have passed. It is not a matter of a debt due and owing but of property wrongfully withheld; and the beneficiary of the trust

may recover the property or its substituted equivalent at any time, provided only that he can identify it. (*First Nat. Bank of Paterson* v. *Nat. Broadway Bank*, 156 N. Y. 459.) However, the right to pursue fails when means of ascertaining identity fail. " Equity only stops the pursuit when the means of ascertainment fails," but it stops then. (*Newton* v. *Porter*, 69 N. Y. 133, 139; *Ferris* v. *Van Vechten*, 73 id. 113.) If it were a matter of trust funds illegally diverted and utilized by a trustee and then commingled with other moneys of the trustee — whether the funds were deposited in a bank or otherwise employed — there is no doubt that the beneficiary of the trust could follow his funds so long as identification to this extent were possible. (*Brown* v. *Spohr*, 180 N. Y. 201; *Van Alen* v. *American Nat. Bank*, 52 id. 1.) But that is not the instant situation. The Title Company accepted the funds of appellants as a borrower and gave its certificates therefor with knowledge that the investments were contrary to statute. The fiduciaries were obligated by statute (Civ. Prac. Act, § 1384-l) to invest these moneys and there is neither claim nor suggestion that the fiduciaries have profited by the investments or have acted otherwise than in the best of faith. The certificates provide that in consideration for the moneys received, the Title Company assigns to each registered holder of a certificate — not a bond or mortgage or a part or share of a bond or mortgage, but — an undivided, co-ordinate share of a principal sum secured by bonds and mortgages deposited with the Marine Trust Company of Buffalo. The Title Company agrees to pay the holders five and one-half per cent interest per annum and to repay to the holders in ten years the principal sum secured. Three years after date the holder is given the right upon sixty days' notice to require payment in full. Bonds and mortgages held may be replaced by other bonds and mortgages. The holder of a certificate agrees with all other holders to give the Title Company certain authority and powers as to handling the bonds and mortgages deposited and generally conducting the business of the company. It is to be noted that the Title Company did not agree to hold and apply the moneys received from any particular investor as a segregated fund for repayment to him, thus distinguishing the situation from that involved in *People* v. *City Bank of Rochester* (96 N. Y. 32). The funds went into the treasury of the borrower along with the moneys obtained from all other investors, competents and incompetents. The funds thus acquired and commingled were then at least under the control of the Title Company to be utilized — and were utilized — in the purchase of bonds and mortgages in furtherance of its agreements with all the lenders of the money. It was a continuing process of buying and

selling and substituting bonds and mortgages and turning over and re-turning over of funds borrowed and held in one mass for the company's operations. But the funds were all borrowed money, to be repaid in ten years with interest, some of them perhaps in three years. The great majority of the lenders were in complete ignorance of any illegal acquirements of trust funds by the Title Company. All things considered, the Title Company was in fairness but a trusted custodian and representative of all the certificate holders to invest the funds as per agreement, to pay interest, to repay the investors, the lenders, in due time in full. In such circumstances, the trust funds are not earmarked, they cannot be followed or identified or any part of them segregated for full repayment to the appellants or those similarly situated upon any trust theory. Exact identification being impossible, it should at least appear — to justify a grant of priority — that the funds turned over to the Title Company by these fiduciaries are a part of the general mass of moneys still belonging to that company — that the moneys on hand for distribution include the funds paid in by appellants. (*Matter of Cavin* v. *Gleason*, 105 N. Y. 256, 262, 263; *Matter of Hicks*, 170 id. 195.) When the character of the business carried on by the Title Company and the disposition made of the moneys paid to it for certificates issued are considered it is difficult to see how — under any theory — identity of funds has been proved with sufficient accuracy to justify the interposition of equity, to hold the Title Company as a constructive trustee and grant the requested right to preference to the disadvantage of the other innocent creditors of the Title Company to whom, in large share, equitably belong the securities of the Series D Corporation.

There is no merit in the claim that creditors of the owners of these trust funds are being unlawfully aided. The other owners of certificates are in no sense creditors of the veterans or the infants. They are but coholders of documents of indebtedness, the rights of all being identical.

The order in so far as appealed from should be affirmed, without costs.

All concur. Present — TAYLOR, EDGCOMB, THOMPSON, CROSBY and LEWIS, JJ.

Order so far as appealed from affirmed, without costs.