[Civ. No. 8051. Fourth Dist., Div. Two. Nov. 7, 1966.]

HOWARD P. BARNES, as Administrator, etc., Plaintiff and Appellant, v. JOHN W. HARTMAN et al., Defendants and Respondents.

216

Darwin L. Rogers for Plaintiff and Appellant.

Harmon G. Scoville for Defendants and Respondents.

McCABE, P. J.—Plaintiff brought this action claiming treble the amount of interest paid for usury. From a judgment in favor of defendants plaintiff appeals.

Plaintiff, owner in fee simple of a parcel of unimproved property, (here called the Brookhurst property), entered into a long term lease on April 7, 1959, with several individuals. The lease provided, among others, that lessees (1) should make improvements on the land in the minimum amount of $75,000 and within a stated time from the date of the lease; (2) would hold lessor harmless from any and all liens arising from the improvements and there should be "control" of the construction funds through vouchers. By the terms of the lease, lessor

(plaintiff herein) agreed to subordinate his interest in the property to a construction loan which was not to exceed $165,000 so long as there was no personal obligation upon him.

Pursuant to the terms of the lease, lessees exercised their rights to assign the lease to a corporation (hereinafter referred to as Miroca) organized and owned by them. Through its president, Miroca negotiated for and obtained a loan from defendant Fullerton Mortgage & Escrow Company in the sum of $125,000. This loan was represented by a promissory note, dated December 7, 1959, executed by Miroca and the individuals who form it and who were the lessees of plaintiff's Brookhurst property. Plaintiff had no part of the negotiation for the loan and none of the proceeds were paid to him. Plaintiff did not sign the promissory note which represented the loan. In addition to Miroca and the individuals who organized it, plaintiff signed the trust deed which secured the promissory note. The payee of the note and the named beneficiary and trustee of the trust deed was defendant Fullerton Mortgage & Escrow Company. A formal ''Authorization for Disbursement of Funds'' was signed by the lending institution, Miroca and by plaintiff which instrument provided for progress payments as certain phases of construction were completed. Any balance of funds remaining after payment of claimants was to be paid to Miroca.

Defendant Hartman, president of defendant Fullerton Mortgage & Escrow Company testified at trial that he and other representatives of defendant Fullerton Mortgage & Escrow Company visited the site on numerous occasions for the purpose of inspecting the construction work. He further testified the building costs payments were verified by means of spot checks of lists of billings furnished by the contractor to the invoices. In any event it soon became apparent to defendant Hartman that the costs of construction were not being paid in accordance with the ''Authorization for Disbursement'' schedule which had been previously executed. He thereupon requested a waiver of that schedule from plaintiff which plaintiff Barnes agreed to and executed the waiver on April 28, 1960, at which time some $87,000 remained of the original loan.

A notice of completion was recorded on May 19, 1960, but the evidence indicates all the debts incurred in the construction had not been paid. Eventually Miroca defaulted in its payments required by the promissory note. Defendant Fuller-

ton Mortgage & Escrow Company on March 8, 1961, filed a "Notice of Default and Election to Sell under Deed of Trust." By a "Corporation Quitclaim Deed" dated March 24, 1961, and recorded May 12, 1961, Miroca quitclaimed its interest to one Nathan Singer and plaintiff as tenants in common. By a "Quitclaim Deed" dated March 27, 1961, and recorded May 12, 1961, the individuals who were lessees under the original lease quitclaimed their interests to one Nathan Singer and plaintiff, as tenants in common.

On March 21, 1961, plaintiff and one Singer entered into an escrow agreement whereby Singer agreed to purchase and plaintiff agreed to sell the Brookhurst property. Through this escrow Singer agreed to pay the "present encumbrances on the property" which were "known to be in excess of $170,000 plus various interest and foreclosure charges." Plaintiff agreed to accept promissory notes secured by a trust deed subordinated to a first trust deed placed on the Brookhurst property by Singer. These notes in which plaintiff was payee were to be in the amount of $100,000 less certain specific fees and charges with which we are not here concerned. The promissory note executed by Miroca and the individuals who were the original lessees was paid off in the escrow between Singer and plaintiff from proceeds deposited by Singer and which Singer had obtained from a different financial institution. The Brookhurst property was reconveyed by defendant Fullerton Mortgage & Escrow Company to plaintiff and lessee corporation. This reconveyance instrument is dated April 26, 1961, and recorded May 12, 1961.

By a grant deed, dated May 10, 1961, and recorded May 12, 1961, plaintiff granted the Brookhurst property to Singer and Singer's wife.

In his amended complaint, filed February 26, 1963, plaintiff alleges he and Miroca, "contracted in writing, as borrowers" with defendant Fullerton Mortgage & Escrow Company, as lender, to borrow money; that the loan was made, and later after notice of default, plaintiff sold the Brookhurst property using some of the proceeds to pay the demands of defendant Fullerton Mortgage & Escrow Company; that defendant Fullerton Mortgage & Escrow Company had paid out only $113,558 but plaintiff paid defendant Fullerton Mortgage & Escrow Company $129,286.46; that $18,704.03 of this sum was interest charge which was in excess of the legal rate.

In the joint pretrial statement signed by the parties and which is part of the record on this appeal, plaintiff con-

tended he was a "borrower by reason of signing the loan agreement (escrow instructions) and further became a surety by reason of signing the trust deed."

Contrarily, defendants have continuously contended through the various proceedings including demurrers, pretrial statement, motion for judgment on the pleadings, motion to exclude evidence and objections to admissibility of evidence that no cause of action resided in plaintiff since he did not fall within the class of persons recited and protected in article XX, section 22, California Constitution; section 3 of the Usury Law of California (Stats. 1919, p. lxxxiii, § 3, West's Civil Code, § 1916-3 and Deering's Gen. Laws, 1954, Act 3757, § 3).

After this appeal was perfected, plaintiff died and by order of court the personal representative of his estate was substituted as party plaintiff. Plaintiff's death did not abate any cause of action which may have rested in plaintiff. (Probate Code, section 573; *Scott* v. *Hollingsworth,* 215 Cal., 314, 319 [9 P.2d 836, 82 A.L.R. 995]; *Goodwin* v. *Alston,* 130 Cal.App.2d 664 [280 P.2d 34].)

Insofar as pertinent, article XX, section 22, California Constitution, which was adopted in 1934, provides: "The rate of interest upon the loan or forbearance of any money, goods or things in action, or on accounts after demand or judgment rendered in any court of the State, shall be 7 per cent per annum but it shall be competent for the parties to any loan or forbearance of any money, goods or things in action to contract in writing for a rate of interest not exceeding 10 percent per annum.

"No person, association, copartnership or corporation shall by charging any fee, bonus, commission, discount or other compensation receive from a borrower more than 10 percent per annum upon any loan or forbearance of any money, goods or things in action.

". . . . . . . . . . . .

"The provisions of this section shall supersede all provisions of this Constitution and laws enacted thereunder in conflict therewith. (Added Nov. 6, 1934.)"

Section 1916-3, Civil Code (Usury Law of California [Deering's Gen. Laws, 1954, Act 3757, § 3]) in pertinent part provides for the recovery of treble the amount of interest paid under a usurious transaction. Sections 1916-1 to sections 1916-5 [Deering's Gen. Laws, 1954, Act 3757, §§ 1-5] became a part of our law by initiative measures in 1919.

220

■ The 1934 constitutional provision did not revise or repeal the entire subject encompassed within the Usury Law. Insofar as it established or created different language from that in the Usury Law, the Constitutional provision is supreme and controlling. (*Penziner* v. *West American Finance Co.*, 10 Cal.2d 160, 174-175 [74 P.2d 252].) The constitutional provisions superseded any provisions of the Usury Law which are in conflict therewith. (*Nuckolls* v. *Bank of California*, 10 Cal.2d 278, 282 [74 P.2d 271]; *Fenton* v. *Markwell & Co.*, 11 Cal.App.2d Supp. 755, 761-762 [52 P.2d 297]; cf. *Heald* v. *Friis-Hansen*, 52 Cal.2d 834, 838 [345 P.2d 457].)

■ Plaintiff, to maintain his action to recover for treble the amount of interest paid to defendant Fullerton Mortgage & Escrow Company, must bring himself within the definitive edict of the constitutional provision of a "borrower." The sections 1916-1 et seq., Civil Code, *supra*, describe the procedure which a borrower must follow to recover on usurious transactions. Since the constitutional provision sets forth the fundamental law that no lender "by charging any fee, bonus, commission, discount or other compensation receive from a borrower more than 10 per cent per annum . . . ," the right of action delineated in sections 1916-1 et seq., Civil Code, *supra*, is in the "borrower."

We find no case in California defining "borrower" in cases citing and deciding the meaning or interpretation of section 22, article XX, *supra*, therefore, we must seek other legal sources.

Section 18004, Financial Code, states: "*Borrower* means the person receiving the proceeds or benefits of a loan."

In 11 C.J.S., "Borrower," page 529, borrower is variously defined: "The word implies a loan, a lender, a thing loaned, and a contract between the parties, (*State* v. *Brandt*, 41 Iowa 593, 610), and has been defined or employed as meaning a debtor, (*In re Title & Mortgage Guarantee Co. of Buffalo*, 284 N.Y.S. 335, 336, 246 App.Div. 435); one of the two parties to a loan (*State* v. *Brandt*, 41 Iowa 593, 610; *Payne* v. *Gardiner*, 29 N.Y. 146, 167); one who receives a loan of money, usually made at his request and for his benefit, upon an agreement, express or implied, to repay the sum loaned, with or without interest (*Payne* v. *Gardiner, supra*). . . ."

Section 1912, Civil Code, provides that "A loan of money is a contract by which one delivers a sum of money to another, and the latter agrees to return at a future date a sum equivalent to that which he borrowed . . ."

In *Milana* v. *Credit Discount Co.*, 27 Cal.2d 335, 339-340 [163 P.2d 869, 165 A.L.R. 621], the Supreme Court defines a loan as follows: "A loan, on the other hand, is the delivery of a sum of money to another under a contract to return at some future time an equivalent amount with or without an additional sum agreed upon for its use; and if such be the intent of the parties the transaction will be deemed a loan regardless of its form. (*In re Grand Union Co.*, 219 F. 353, 356 [135 C.C.A. 237]; *O. A. Graybeal Co.* v. *Cook*, 111 Cal.App. 518, 528 [295 P. 1088].)"

Under any of the cited definitions, plaintiff is not a borrower nor was there a loan to him. He did not negotiate for or receive the loan from defendant Fullerton Mortgage & Escrow Company, nor did he receive any of the proceeds of that loan. Any funds flowing from that loan were paid to contractors, subcontractors, materialmen and others in like class and to Miroca.

Plaintiff contended at the trial that by reason of his signing the escrow instructions and the deed of trust which secured the loan, he was a borrower of the money. Defendant properly countered, plaintiff was doing only that which he contracted to do under the terms of the lease to subordinate his remaining estate in the real property. The escrow instructions and trust deed which he signed reflect no more than a compliance with the lease provisions. Neither the escrow instructions nor the trust deed provide plaintiff incurred an obligation to repay. The absence of such provisions was consistent with the lease which provided that if lessees obtained a loan there would be no personal obligation upon lessor and lessees would hold lessor harmless. Plaintiff was never requested by defendant Fullerton Mortgage & Escrow Company or anyone to sign nor did he sign the promissory note. Plaintiff did not sign any paper or instrument which required him, personally, to repay the loan or the interest.

Plaintiff was not a borrower within the meaning of the law. The trial court did not find plaintiff to be a borrower but found plaintiff was a proper party to bring the action. Of course, this finding was a conclusion of law and may be disregarded. The "Conclusion of Law" couched in the same language is not sustained by the facts or the findings of fact. The trial court did make findings of fact essentially as this opinion recites them.

Plaintiff's next postulation is: "If I was not a

borrower, I am a surety for the loan, therefore, I can maintain this action.''

Whether we agree with the decisions of *Martin* v. *Ajax Constr. Co.*, *infra* [124 Cal.App.2d 425 (269 P.2d 132)], or *Sosin* v. *Richardson*, *infra* [210 Cal.App.2d 258 (26 Cal.Rptr. 610)], that a guarantor who actually signed a guarantee to repay the loan may have a cause of action to recover on a usurious transaction, cannot affect the legal conclusion on this appeal for plaintiff does not bring himself within the facts recited in the *Martin* or *Sosin* cases.

In our examination of this postulation, we may use section 2787, Civil Code, to determine plaintiff's legal position. That section reads in part: ''The distinction between sureties and guarantors is hereby abolished. The terms and their derivatives, wherever used in this code or in any other statute or law of this State now in force or hereafter enacted, shall have the same meaning, as hereafter in this section defined. A surety or guarantor is one who promises to answer for the debt, default, or miscarriage of another, or hypothecates property as security therefor. . . .''

Although *Martin* v. *Ajax Constr. Co.*, 124 Cal.App.2d 425, 431 [269 P.2d 132], states without cited authority that a guarantor, as well as the maker, may assert the vices of the instrument, that case is readily distinguishable, as pointed out by Mr. Justice Kingsley in *White* v. *Seitzman*, 230 Cal.App.2d 756, 763 [41 Cal.Rptr. 359], for in *Martin, supra,* the appellants had expressly waived the right to appeal on the question of treble damages under this statute. Any language in the *Martin* case cited by the plaintiff should be referred to in that context. Additionally in *Martin* and in *Sosin* v. *Richardson,* 210 Cal.App.2d 258, 266 [26 Cal.Rptr. 610], which cites with approval the dictum in *Martin,* factually the guarantor executed an instrument guaranteeing the repayment of the loan. That act is absent in the case at bench.

Considering the above-quoted provisions of section 2787, Civil Code, as placing a guarantor and surety in the same legal position, plaintiff never signed an instrument or document guaranteeing the repayment of the loan as required by section 2793, Civil Code.

The lease contract under the terms of which plaintiff agreed to subordinate his remaining estate in the Brookhurst property was independent of the loan agreement between Miroca and defendant Fullerton Mortgage & Escrow Company. As to plaintiff, any legal consideration was embraced within the

lease agreement. Defendant Fullerton Mortgage & Escrow Company did not request or require any consideration from plaintiff. Plaintiff by signing the escrow instructions and deed of trust was satisfying a legal obligation owed by him and arising out of the lease contract between him and the lessees. (See: *Sosin* v. *Richardson, supra,* 210 Cal.App.2d 258, 266; *Commercial Credit Co.* v. *Semon* (N.D. Cal. 1928) 33 F.2d 356; *Matthews* v. *Ormerd,* 140 Cal. 578, 582 [74 P. 136]; *Zimmerman* v. *Boyd,* 97 Cal.App. 406, 408 [275 P. 509].)

 Plaintiff attempts to bring himself within the class of persons who may bring into issue the usurious character of the loan by contending he paid the principal and interest to defendant from the proceeds of sale. There is no evidence that prior to the Singer sale, plaintiff made any payments to defendant. There are two answers to this contention: First, as to the estate in the Brookhurst property held by the lessees and their assignee, it was granted to plaintiff. Thus, as to that estate plaintiff was a grantee. Being a grantee taking subject to the indebtedness, he is not a person who can legally raise the issue of usury. (*Esposti* v. *Rivers Brothers, Inc.,* 207 Cal. 570, 572-573 [279 P. 423].) Secondly, by the sale to Singer and from the proceeds of that sale, defendant Fullerton Mortgage & Escrow Co. received an amount sufficient to satisfy its demands. Plaintiff was merely protecting himself from losing his property. Plaintiff was by this sale preventing defendant Fullerton Mortgage & Escrow Company from proceeding to enforce a right which it had when Miroca defaulted in making payments as required in the promissory note. When plaintiff signed the deed of trust, he knew that there was a possibility that Miroca might default on the payments and in this event he might have to rescue his property. Plaintiff was under no legal obligation to pay defendant Fullerton Mortgage & Escrow Company. Plaintiff finds himself in no different position from a holder of a junior encumbrance. If there is a default in the senior encumbrance, the holder of the junior encumbrance must decide whether to lose his estate in the encumbranced property or pay whatever is necessary to satisfy the holder of the senior encumbrance. By satisfying the demands of the holder of the senior encumbrance, even though the senior loan is usurious in nature, the holder of the junior encumbrance does not have a cause of action for usury. (*Ames* v. *Occidental Life Ins. Co.,* 210 Cal. 271, 273-274 [291 P. 182]; *Farmers & Ginners Cotton Oil Co.* v. *Hogan,* 267 Ala. 248 [100 So.2d 761].) The obvious and

cogent reason for this rule of law is that the party or his personal representative asserting the claim of usury must be personally obligated on the promissory note or indebtedness.

█ Under the facts of this case the claim of usury is not being used as a shield which was the real purpose in the enactment of the constitutional provision and the Usury Law. (*Haines* v. *Commercial Mortgage Co.*, 200 Cal. 609, 621 [254 P. 956, 255 P. 805, 53 A.L.R. 725]; *Wooten* v. *Coerber*, 213 Cal.App.2d 142, 150 [28 Cal.Rptr. 635]; *Van Noy* v. *Goldberg* 98 Cal.App. 604, 609 [277 P. 538].)

Plaintiff not having brought himself within the class of persons protected by the law has no standing in court on the cause of action alleged by him.

We must disregard language to contrary in such cases as *Matthews* v. *Ormerd, supra,* 140 Cal. 578; *West Coast Builders, Inc.* v. *Pacific States Auxiliary Corp.,* 129 Cal.App. 112 [18 P.2d 71]; *Babcock* v. *Olhasso,* 109 Cal.App. 534 [293 P. 141]; *Zimmerman* v. *Boyd, supra,* 97 Cal.App. 406, and cases citing them for these cases were decided before the more limited and restrictive language of article XX, section 22, which as stated, was enacted in 1934. The facts in the case of *Roesch* v. *DeMota,* 24 Cal.2d 563 [150 P.2d 422], decided by our Supreme Court after the 1934 constitutional amendment, but not citing it, are clearly distinguishable from those in the instant case. The broad and sweeping language in *Roesch,* at page 574, must be considered as *obiter dictum.*

To set forth plaintiff's contentions as to why and on what basis the loan to Miroca by defendant Fullerton Mortgage & Escrow Company was usurious is unnecessary to this opinion. Any statement of the law in reply to this contention would be *obiter dictum.*

Judgment affirmed.

Kerrigan, J., concurred.