[Civ. No. 1183. Fifth Dist. Feb. 4, 1970.]

JAMES W. LEE et al., Plaintiffs and Appellants, v.
EDILIO MARCHETTI et al., Defendants and Respondents.

## COUNSEL

Lee & Hertzer and Theodore B. Lee for Plaintiffs and Appellants.

Jeffry, Gibson & Barbour and Robert N. Barbour for Defendants and Respondents.

## OPINION

**GARGANO, J.**—Appellants brought this action against respondents in the court below to recover treble damages for an allegedly usurious loan. After issue was joined on the complaint respondents successfully moved for a

summary judgment resulting in a dismissal of the action. But, "once again, the temptation to cut the Gordian knot of involved litigation by resort to a summary judgment has proven erroneous." (*Silver Land & Development Company* v. *California Land Title Company,* 248 Cal.App.2d 241, 242 [56 Cal.Rptr. 178].) In other words, when the numerous transactions involved in this case are carefully analyzed, and when all doubts are resolved in favor of appellants, it is manifest that there are several material issues to be resolved by the trier of fact. Thus, this case does not lend itself to the summary judgment procedure. ■ As we summarized in *Pettus* v. *Standard Cabinet Works,* 249 Cal.App.2d 64, 67 [57 Cal.Rptr. 207]: "The salient philosophy behind this procedural device is to provide a method for the prompt disposition of actions and proceedings which have *no merit* and in which there is no triable material issue of fact (28 Cal.Jur.2d 666). ■ However it is drastic in nature, and it should be resorted to sparingly and with great caution (*Eagle Oil & Refining Co.* v. *Prentice,* 19 Cal.2d 553 [122 P.2d 264]; *Albermont Petroleum, Ltd.* v. *Cunningham,* 186 Cal.App.2d 84 [9 Cal.Rptr. 405]; *Kimber* v. *Jones,* 122 Cal.App.2d 914 [265 P.2d 922]). In fact, if any doubt exists as to whether summary judgment be granted, such doubt should be resolved against the moving party (*Johnson* v. *Banducci,* 212 Cal.App.2d 254 [27 Cal.Rptr. 764])."

The transactions to which we have referred are essentially these:

### Transaction No. 1

On August 7, 1964, Jack Williams, a licensed real estate broker, opened an escrow with the Title Insurance and Trust Company of Stockton (Escrow No. 138443) on behalf of the Varni Corporation for the sale of a building, known as the California Building, by the Varni Corporation to an unnamed buyer. On the same day, Williams opened a second escrow with the Title Insurance and Trust Company (Escrow No. 138444), on behalf of the Donald R. Warren Company for the sale of certain real property, known as Bacon Island, by the Donald R. Warren Company to the Varni Corporation. The Varni Corporation had agreed to purchase Bacon Island from the Donald R. Warren Company for $467,150 if it was able to sell the California Building to some third party for the cash price of $189,150; and the two companies retained Jack Williams to handle both transactions. He was to receive a commission of $13,089.50 for the sale of Bacon Island and a commission of $5,250 for the sale of the California Building. Subsequently, on October 23, 1964, the sale price of Bacon Island was reduced to $413,883.42, and the sale price of the California Building was reduced to $175,000.

### Transaction No. 2

On October 22, 1964, appellant James Lee agreed to purchase the California Building from Jack Williams for $225,000. By the terms of the agreement Lee agreed to pay Williams $175,000 in cash, and to sign a promissory note for the $50,000 balance, and to forfeit a $30,000 deposit if he was unable to come up with the necessary financing within five days; Lee hoped to borrow $125,000 on a first loan against the building and $25,000 on a second loan against the building; he retained Williams to obtain the first loan on his behalf for a brokerage fee of $7,500.

### Transaction No. 3

On October 28, 1964, appellant James Lee entered into a new contract to purchase the California Building, this time with Elizabeth N. Williams, the wife of Jack Williams, for the purchase price of $266,000; Lee agreed to pay Mrs. Williams $30,000 in cash (his initial deposit) and to sign a promissory note, payable on or before November 1, 1965, secured by a first deed of trust against the building, for the $236,000 balance. It seems that when Williams was unable to negotiate the $125,000 loan on appellants' behalf, he agreed to arrange the financing appellants needed to buy the California Building with their initial $30,000 deposit if appellants were willing to pay an additional $41,000 for the building. However, the new contract was made with Williams' wife, Elizabeth N. Williams, instead of Williams.

### Transaction No. 4

On October 29, 1964, an escrow was opened with the Title Insurance and Trust Company of Stockton (Escrow No. 140394) for the sale of the California Building from Elizabeth N. Williams to appellants. In addition, Escrow No. 138443 was amended, and Mrs. Williams was substituted for the unnamed party. On the same day the Varni Corporation informed the escrow company that the sale price of the California Building was reduced from $175,000 to $156,660.50 but that no commission was to be paid to Jack Williams for the sale of the building. The reduction of $18,340.50 in the sale to Mrs. Williams was the exact amount due to Jack Williams on commissions for the sale of Bacon Island and the California Building. A few days later, on November 2, 1964, the Varni Corporation notified the Title Insurance and Trust Company that the sale price of the building was increased to $191,660; it also authorized the company to accept a $56,660 down payment and a $135,000 promissory note, secured by a first mortgage against the California Building, in lieu of cash. In addition, the Varni Corporation informed the escrow company that the promissory note was to be sold, without recourse, to a party designated by the buyer for $100,000 and

that this $100,000 was to be added to the $56,660 down payment. Thus, the Varni Corporation was to receive $156,660 from Mrs. Williams. The amount of Mr. Williams' commissions, $18,340.50, added to this cash price, gave Varni their initial asking price of $175,000.

### Transaction No. 5

On November 3, 1964, the Varni Corporation deeded the California Building to Elizabeth N. Williams, in her name and as her separate property. Mrs. Williams, in turn, signed a promissory note for $135,000 secured by a first trust deed against the building. Then, by prior agreement between appellants, the Williamses and respondents, the promissory note and trust deed were recorded ahead of appellant Lee's contract of sale, thereby giving the trust deed priority and making the sale of the building to Lee subject to the $135,000 indebtedness.

### Transaction No. 6

On November 4, 1964, appellant Lee's initial $30,000 cash deposit was placed in the Lee-Williams escrow, Escrow No. 140394, and then transferred to the Varni Corporation-Williams escrow, Escrow No. 118443. On the same day an additional $16,716.50 was added to Escrow No. 138443, bringing the total on deposit in that escrow to $46,716.57.[1] Afterward, the $46,716.57 total was transferred to the Varni-Warren Company escrow, Escrow No. 138444.

### Transaction No. 7

On November 8, 1965, the $135,000 note signed by Elizabeth N. Williams became due and payable, and when no payment was made on this note respondents threatened to foreclose their trust deed. Appellants offered to pay respondents $100,000 plus 10 percent interest to avoid foreclosure, but respondents refused the offer. The foreclosure sale was held on April 12, 1966, and respondents acquired the California Building at that sale. They sold the building a year later for $170,000.

■ Admittedly, the mere fact that respondents purchased Mrs. Williams' $135,000 promissory note from the Varni Corporation at a $35,000 discount does not, per se, prove that the transaction was usurious. This follows because if, for example, B holds A's $100,000 promissory note payable in one year, and in order to convert it to cash sells it to C for $75,000, the transaction is not usurious. C has not loaned A money at an annual interest rate of 25 percent; he has purchased A's indebtedness to B at a discounted price. (*Janisse* v. *Winston Investment Co.,* 154 Cal.App.2d

---

[1]The additional $10,000 was apparently paid out of escrow.

580, 582 [317 P.2d 48, 67 A.L.R.2d 225].) But, if in our example B is, in fact, a dummy, and if, in fact, the form of the transaction is a sham and subterfuge to cover up a loan from C to A, then the discount is deemed interest and the transaction is usurious; the rate of interest exceeds the limit allowed by article XX, section 22, of the California Constitution (*Janisse v. Winston Investment Co., supra*). Thus, the crucial question presented in this appeal from a summary judgment is not whether the record supports a finding that the Varni Corporation sold its building to Elizabeth Williams, taking a $135,000 promissory note as part of the purchase price and then, in good faith, discounted the note to respondents, as respondents seemingly suggest; it is whether there is any evidence in the record, contradicted or otherwise, to support an inference that respondents loaned $100,-000 to appellants, and that Mrs. Williams gave the Varni Corporation her $135,000 note which the Varni Corporation sold to respondents at a $35,000 discount, to disguise the usurious nature of the loan.

■ Stated in a slightly different manner, the crucial question is whether the transactions we have described support an inference that the parties were all involved, albeit for different motives, in a conspiracy to evade the usury laws of this state, appellants to salvage a $30,000 deposit and to buy a building, the Williamses to save Mr. Williams' commission and at the same time to make a profit of their own from the sale of the building, and respondents to lend money at a rate of interest in excess of that allowed by law.

We conclude that the answer to the question posed is in the affirmative. This is not a case in which the undisputed evidence proves, as a matter of law, that the seller of a building took a promissory note in partial payment for the building and then sold it, in good faith, to a third party at a discount. On the contrary, the evidence is reasonably susceptible to the interpretation that the sale of Mrs. Williams' promissory note by the Varni Corporation to respondents was a surreptitious transaction to conceal the fact that respondents were lending money at a usurious rate of interest. The Varni Corporation was willing to sell its building for $175,000 cash, but, presumably, at Williams' request, it increased the purchase price to $191,660. At the same time, Varni instructed the escrow company to accept Mrs. Williams' $135,-000 promissory note secured by a first deed of trust against the building, in partial payment. Then, acting under Mrs. Williams' instructions, the Varni Corporation sold the promissory note and trust deed to respondents at a pre-arranged $35,000 discount, and through this circuitous route received the $175,000 cash it wanted in the first place.

Moreover, the evidence is reasonably susceptible to the interpretation that the obreptitious loan was made to appellants. James Lee initially agreed to buy the California Building from Jack Williams (who did not own it) for $225,000. He also retained Williams to procure a $125,000 loan against

the building. Then, when Williams was unable to negotiate the loan, assumably at a normal rate of interest, Williams nevertheless volunteered to secure the financing that appellants needed if they agreed to pay an additional $41,000 for the already grossly overpriced building.[2] And, suspiciously, Williams had appellants sign a new contract to buy the building at the increased purchase price with his own wife, Elizabeth N. Williams. A few days later the Varni Corporation took Mrs. Williams' $135,000 promissory note and trust deed and sold the note to respondents at a $35,000 discount. This discount closely approximated the additional $41,000 appellants agreed to pay for the building. Afterward, the promissory note and trust deed were recorded ahead of appellant's contract of sale pursuant to an earlier agreement between appellants, the Williamses and respondents, thereby making the sale subject to the $135,000 indebtedness.

Respondents contend that Mrs. Williams put up $26,000 of her own money, in addition to her husband's commissions, in order to acquire the California Building, and that this proves that she bought the building for resale purposes and merely arranged to have her own promissory note discounted to respondents in order to enable the seller of the building (the Varni Corporation) to convert the note to the cash it needed to buy Bacon Island. They argue that even if this transaction is deemed a usurious loan, appellants cannot complain because the loan was made to Mrs. Williams, not appellants. In other words, they assert that appellants bought the California Building from Mrs. Williams, subject to her indebtedness, and hence are not persons who can legally raise the usury issue (*Barnes* v. *Hartman,* 246 Cal.App.2d 215, 223 [54 Cal.Rptr. 514]).

Respondents' contention would be persuasive if they had prevailed after a trial on the merits. However, their argument is not determinative on an appeal from a summary judgment. The mere fact that Mrs. Williams may have used her own capital to save her husband's commission and to make a profit in her own right is not controlling, if respondents loaned the money to appellants and Mrs. Williams jointly. Manifestly, the evidence is susceptible to this interpretation. It is also susceptible to the interpretation that Jack Williams used his wife as a go between to conceal the fact that he was making a profit of his own from the sale of the building (in addition to his commission) and to disguise a usurious loan he negotiated on appellants' behalf and as their agent.

Respondents argue next that the note which they purchased at a discount cannot be considered a usurious loan made to appellants, because appel-

[2]Significantly, the Varni Corporation was willing to sell the building for $175,000, and respondents acquired it at the foreclosure sale for around $140,000 and sold it a year later for $170,000.

lants did not receive any of the proceeds and did not incur any obligation to pay the note. While it is true that the proceeds of the loan were not paid directly to appellants, arguably, the loan was made for appellants' benefit and used on their behalf. Moreover, albeit appellants did not expressly agree to pay the note, it was amply secured by a building in which they had a substantial equity. In a few words, there was economic compulsion on the part of appellants to pay the loan; it was either pay or lose their equity. To hold that the transaction cannot be considered a loan for this reason would open the door to the evasion of California usury laws through the medium of secured transactions.

Respondents' last contention, that they paid full value for Mrs. Williams' $135,000 promissory note by discharging certain actionable debts owed by Jack Williams to Edilio Marchetti, is detrimental, not favorable, to their position. The most that can be gleaned from Mr. Marchetti's deposition is that the total of the debts discharged amounted to $6,100, and this amount explains the difference between the increase in the purchase price of the California Building ($41,000) and the $35,000 for which Mrs. Williams' promissory note was discounted by respondents. Manifestly, the explanation not only demonstrates that the transaction may have been a usurious loan, and that respondents were in on the "deal" from its inception, but it suggests that Mrs. Williams was acting as her husband's go between, nothing more.

The judgment is reversed.

Stone, P. J., and Coakley, J., concurred.