Filed 11/26/13  Sheffield v. Chevron CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| JOHNNY SHEFFIELD,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>CHEVRON U.S.A., INC.,<br><br>    Defendant and Respondent. | F066032<br><br>(Super. Ct. No. CV-274428)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kern County.  William D. Palmer, Judge.

Law Offices of Todd B. Becker, Todd B. Becker and Inna S. Demin for Plaintiff and Appellant.

Hager, Macy & Jensen and Harry E. Macy for Defendant and Respondent.

-ooOoo-

This is an appeal from a judgment of the Superior Court of Kern County entered on an order granting a motion for summary judgment in favor of defendant and respondent Chevron U.S.A., Inc. (Chevron). Johnny Sheffield, plaintiff and appellant, pled a cause of action for premises liability against Chevron, claiming the company's negligence resulted in his injury. Chevron countered that it did not owe a legal duty to Sheffield, an employee of its independent contractor, on the grounds of *Privette v. Superior Court* (1993) 5 Cal.4th 689 (*Privette*). The trial court agreed with Chevron and granted summary judgment. On appeal, Sheffield contends that summary judgment is improper because a triable issue exists as to whether Chevron owed a legal duty. In particular, he asserts Chevron retained control of workplace safety and exercised that control in a manner that affirmatively contributed to his injury. Chevron denies this allegation. We conclude that Sheffield fails to establish a triable issue of material fact and affirm the judgment.

## FACTUAL AND PROCEDURAL HISTORY[1]

On September 17, 1987, Chevron hired Golden State Drilling, Inc. (Golden State) to engage in drilling operations at Cymric Oil Field near McKittrick, California. The companies entered into a Master Rotary Drilling Contract that required Golden State to indemnify Chevron against any loss, damage, liability, and claims thereof for injuries to Golden State's employees sustained on the job, regardless of Chevron's negligence. The agreement further specified that Golden State "shall be responsible for the working conditions of its employees and for correcting any hazard[s] that arise in the performance

---

[1] The facts are based on the parties' separate statements of undisputed facts. (See Code Civ. Proc., § 437c, subd. (b)(1); see also *Mills v. Forestex Co.* (2003) 108 Cal.App.4th 625, 641 [facts not set forth in the separate statement do not exist].) We consider as part of the record evidence to which no objections were made (see Code Civ. Proc., § 437c, subd. (b)(5)) and exclude evidence to which objections were made and sustained (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334; Code Civ. Proc., § 437c, subd. (c)).

2.

of work under this contract," "shall perform all work in a safe manner," and "shall comply with all [of Chevron's] work and safety rules in force at the job site." Chevron also distributed its Business Partner Pocketbook, which outlined its safety policies and procedures, to Golden State's employees.

Sheffield was Golden State's safety captain on Chevron's drilling rig. Sometime before August 12, 2009, he and his coworkers observed that the two sections of grating that were placed above the rig's well cellar to prevent falls were worn. Sheffield raised his concern with Chevron's site managers, who were present on the rig at all times to supervise and ensure job safety. If grating was damaged and needed to be repaired or replaced, Golden State's employees would notify these managers, who in turn hired a welding company to fix the problem. Sheffield took four days off beginning August 12, 2009, and expected the grating sections to be repaired or replaced by the time he returned. On August 16, 2009, a welder removed one of the sections to access the cellar. When Sheffield later attempted to walk across the section that was left in place, it dislodged, causing him to fall into the cellar.

On August 15, 2011, Sheffield filed a form complaint asserting a cause of action for premises liability against Chevron. He alleged that Chevron's negligent ownership, maintenance, management, and operation of its property resulted in his injury. Chevron filed a motion for summary judgment on May 30, 2012, arguing that it did not owe Sheffield a duty to protect him from known and obvious hazards on the rig because the responsibility to provide a safe workplace had been delegated to Golden State pursuant to *Privette*.[2] In an opposition filed on August 29, 2012, Sheffield contended Chevron still owed a duty of care because it maintained control over job safety, assumed responsibility for repairing damaged grating, and induced his reliance. The superior court granted the

---

[2]    In its motion, Chevron noted the terms of the Master Rotary Drilling Contract "reinforced" *Privette'*s presumption of delegation. (Italics & boldface omitted.)

3.

motion on September 17, 2012, and entered judgment in favor of Chevron on September 20, 2012.  Sheffield filed a notice of appeal on October 12, 2012.

## DISCUSSION

I.      The Law of Summary Judgment

Summary judgment provides courts with "a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*); see also *Lee v. Marchetti* (1970) 4 Cal.App.3d 97, 99 [summary judgment promptly disposes of actions and proceedings that have no merit and in which there are no triable issues of material fact].)  A motion for summary judgment shall be granted if all papers submitted show there is no triable issue as to any material fact and the moving party is entitled to judgment as a matter of law.  The court shall consider all evidence presented, except that to which objections have been made and sustained, and all inferences reasonably drawn from the evidence.  (Code Civ. Proc., § 437c, subd. (c).)  The materiality of a fact is measured by the pleadings, which set the boundaries of the issues to be resolved at summary judgment.  (*Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1250; *Hutton v. Fidelity National Title Co.* (2013) 213 Cal.App.4th 486, 493.)

A defendant moving for summary judgment bears the initial burden to produce evidence demonstrating that either one or more elements of the cause of action cannot be established or there is a complete defense to that cause of action.  (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, *supra*, 25 Cal.4th at pp. 849, 854-855.)  If the motion is made against a plaintiff who would bear the burden of proof by a preponderance of evidence at trial, the defendant must present evidence that would require a reasonable trier of fact *not* to find any underlying material fact more likely than not.  Otherwise, he or she would not be entitled to judgment as a matter of law, but would have to present this evidence to a trier of fact.  (*Aguilar*, at p. 851.)  If the defendant makes a prima facie

4.

showing, then the burden of production shifts to the plaintiff to set forth specific facts demonstrating that a triable issue of one or more material facts exists as to that cause of action or a defense thereto. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, at p. 849.) "[F]rom commencement to conclusion, the party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he [or she] is entitled to judgment as a matter of law."[3] (*Aguilar*, at p. 850, fn. omitted.)

II.     Standard of Review

Our task as the reviewing court is to determine de novo whether an issue of material fact exists and whether the moving party is entitled to summary judgment as a matter of law. In other words, we assume the role of the superior court and reassess the merits of the motion. In doing so, we consider only the facts properly before the court at the time it ruled on the motion. (*Brantley v. Pisaro* (1996) 42 Cal.App.4th 1591, 1601.) We apply the same three-step analysis: "First, we identify the issues framed by the pleadings since it is these allegations to which the motion must respond. Second, we determine whether the moving party's showing has established facts which negate the opponent's claim and justify a judgment in the moving party's favor. When a summary judgment motion prima facie justifies a judgment, the third and final step is to determine whether the opposition demonstrates the existence of a triable issue of material fact." (*Hutton v. Fidelity National Title Co.*, *supra*, 213 Cal.App.4th at pp. 493-494.)

Sheffield suggests on appeal that the superior court's rulings sustaining Chevron's objections to evidence offered in opposition to summary judgment should be reviewed de novo.[4] Although our review of a summary judgment motion is de novo, we review a

---

[3]     Whereas a burden of production entails only the presentation of evidence, a burden of persuasion entails the establishment of a requisite degree of belief through such evidence. (*Aguilar, supra*, 25 Cal.4th at p. 850.)

[4]     Sheffield offers *City of South Pasadena v. Department of Transportation* (1994) 29 Cal.App.4th 1280 (*South Pasadena*) and *Reid v. Google, Inc.* (2010) 50 Cal.4th 512

lower court's final ruling on evidentiary objections for abuse of discretion. (See, e.g., *Great American Ins. Cos. v. Gordon Trucking, Inc.* (2008) 165 Cal.App.4th 445, 449; *Powell v. Kleinman* (2007) 151 Cal.App.4th 112, 122; see also *Howard Entertainment, Inc. v. Kudrow* (2012) 208 Cal.App.4th 1102, 1122-1123 (conc. opn. of Turner, P.J.) [evidentiary issues in summary judgment proceedings reviewed for abuse of discretion under the majority rule].) The party challenging the ruling has the burden to establish abuse of discretion. (*DiCola v. White Brothers Performance Products, Inc.* (2008) 158 Cal.App.4th 666, 679.) We will interfere with the lower court's judgment only if the party can show that no judge could reasonably have made the same judgment. (*Ibid.*; see also *Lockhart v. MVM, Inc.* (2009) 175 Cal.App.4th 1452, 1456; *Jennifer C. v. Los Angeles Unified School Dist.* (2008) 168 Cal.App.4th 1320, 1332 [under abuse of discretion standard, court's decision left undisturbed unless it exceeds the bounds of reason].) In the instant case, Sheffield merely states in the abstract that the evidence does not support the trial court's evidentiary rulings and does not affirmatively establish that

---

(*Reid*) as supporting authority. In *South Pasadena*, the Third Appellate District held the abuse of discretion standard to be generally inappropriate in summary judgment proceedings: "'The only exception to the independent review standard applies when we review a trial court's exercise of discretion as allowed by Code of Civil Procedure section 437c, subdivision (e). Under all other circumstances, it is legally and procedurally incorrect to apply an abuse of discretion standard. [Citation.]' [Citation.]" (29 Cal.App.4th at p. 1288.) We point out, however, that the Third Appellate District subsequently sided with the majority rule in *Carnes v. Superior Court* (2005) 126 Cal.App.4th 688, 694.

In *Reid*, the trial court failed to expressly rule on the defendant's evidentiary objections. (50 Cal.4th at p. 534.) Hence, de novo review was proper because the appellate court "had no occasion to determine whether the trial court abused [its discretion]." (*Id.* at p. 535.) By contrast, the trial court in the instant case sustained Chevron's objections to Sheffield's evidence offered in opposition to summary judgment. Moreover, the Supreme Court declined to decide in *Reid* "whether a trial court's rulings on evidentiary objections based on papers alone in summary judgment proceedings are reviewed for abuse of discretion or reviewed de novo." (*Ibid.*)

6.

the court abused its discretion.  Because he does not satisfy his burden, we leave the rulings intact.

III.    <u>Analysis</u>

On appeal, Sheffield argues that summary judgment is improper because a triable issue exists as to whether Chevron owed a legal duty.  Relying on *Hooker v. Department of Transportation* (2002) 27 Cal.4th 198, 202 (*Hooker*), he asserts that a duty arose because Chevron retained control of workplace safety and exercised that control in a manner that affirmatively contributed to his injury.[5]  On the other hand, Chevron denies that it exercised control in this fashion and maintains that *Privette* precludes liability.  At the outset, we must determine whether Chevron establishes facts that negate Sheffield's claim and justify a judgment in its favor.

To prevail on an action for negligence,[6] a plaintiff must show that the defendant owed a legal duty, the defendant breached that duty, and the breach was a proximate or legal cause of his or her injury.  (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 477.)  The threshold element is the existence of a duty toward an interest of another that enjoys legal protection against unintentional invasion.  Whether this essential prerequisite has been satisfied in a particular case is a question of law to be resolved by the court.  (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 57-58; see also *Nalwa v. Cedar Fair, L.P.* (2012) 55 Cal.4th 1148, 1154 ["'Duty, being a question of law, is particularly amenable to resolution by summary judgment.'"].)

---

[5]    Sheffield also presents alternative theories to impute a legal duty to Chevron.  We dismiss them since they are based on cases that (1) predate *Privette*, and (2) are factually inapposite.

[6]    Premises liability is generally governed by an ordinary negligence standard.  (See Civ. Code, § 1714, subd. (a); *Garcia v. Paramount Citrus Assn., Inc.* (2008) 164 Cal.App.4th 1448, 1453, citing *Rowland v. Christian* (1968) 69 Cal.2d 108, 119.)

Generally, employees of independent contractors who are injured in the workplace cannot sue the party that hired the contractor to do the work. (*SeaBright Ins. Co. v. US Airways, Inc.* (2011) 52 Cal.4th 590, 594.) The California Supreme Court has recognized "a presumptive delegation of responsibility for workplace safety from the hirer to the independent contractor, and a concomitant delegation of duty." (*Id.* at p. 597.) The court laid the foundation of this presumption in *Privette*. In that case, Franklin Privette hired a roofing company to install a new tar and gravel roof on his duplex. Jesus Contreras, an employee of the roofing company, was directed by his foreman to carry buckets of hot tar to the roof. While he was performing this task, he fell off a ladder and sustained burns. Contreras sought workers' compensation benefits and sued Privette under the peculiar risk doctrine.[7] (*Privette*, *supra*, 5 Cal.4th at p. 692.) In its decision, the court pointed out that an injured employee of an independent contractor is entitled to recover benefits for injuries arising out of and in the course of employment under the state's workers' compensation scheme, which is "'the exclusive remedy against an employer for injury or death of an employee'" and "achieves the identical purposes that underlie recovery under the doctrine of peculiar risk."[8] (*Id.* at pp. 697, 701.) "[T]o allow an independent contractor's employees who incur work-related injuries compensable under the workers' compensation system to also seek damages under the doctrine of peculiar risk from the person who hired the contractor would give those employees an unwarranted windfall." (*Id.* at pp. 699-700.) The court also recognized that joint operation of the peculiar risk

---

[7] Under the peculiar risk doctrine, a landowner who chooses to undertake inherently dangerous activity on his land should not escape liability for injuries to others simply by hiring an independent contractor to do the work. (*Privette*, *supra*, 5 Cal.4th at pp. 693-694.)

[8] These purposes include providing compensation to employees injured in the workplace, allocating risk to those who benefit from the work, and encouraging industrial safety. (*Privette*, *supra*, 5 Cal.4th at p. 701.)

doctrine and the workers' compensation system, which limits employer liability, would prohibit a nonnegligent hirer who pays for injuries attributable to an employer's negligence from obtaining equitable indemnity from that employer, subjecting the hirer to greater liability. (*Id.* at p. 698.) In light of these considerations, the court held that employees of independent contractors cannot recover tort damages under the peculiar risk doctrine from the person who hired the contractor, but did not cause the injuries. (*Id.* at p. 702.)

Subsequent cases extended *Privette* to prohibit tort recovery under theories that unfairly imposed "derivative" liability on the hirer due to the negligence of the injured party's employer. (See generally *Camargo v. Tjaarda Dairy* (2001) 25 Cal.4th 1235 (*Camargo*) [theory of negligent hiring]; *Toland v. Sunland Housing Group, Inc.* (1998) 18 Cal.4th 253 (*Toland*) [theory of hirer's failure to require contractor to take precautions against peculiar risks].) In *Kinsman v. Unocal Corp.* (2005) 37 Cal.4th 659, 671, the Supreme Court clarified that *Privette* established a presumptive "delegation of responsibility and assignment of liability" for workplace safety from the hirer to the independent contractor.

Chevron presents undisputed evidence that it hired Golden State to operate its drilling rig and Sheffield was Golden State's employee. Thus, Chevron establishes a prima facie case that it did not owe Sheffield a duty to provide a safe workplace because such a duty was presumptively delegated to Golden State.[9] Since Chevron satisfies its

---

[9]    Chevron also presents undisputed evidence that Sheffield and other employees were aware of the grating's worn condition before the accident on August 16, 2009. Hence, it establishes a prima facie case that it cannot be held liable for Sheffield's injury on the theory that it failed to warn Golden State about a latent or concealed preexisting hazardous condition. (See *Kinsman v. Unocal Corp.*, *supra*, 37 Cal.4th at pp. 664, 675 [a hirer may be liable to the contractor's employee for an injury caused by a latent or concealed preexisting hazardous condition on the hirer's premises if the hirer knew or should have known of the condition, the contractor did not know and could not have reasonably discovered the condition, and the hirer failed to warn the contractor].)

initial burden of production, we must now decide whether Sheffield sets forth specific facts showing that a triable issue of material fact exists.

Notwithstanding *Privette*, Sheffield contends that Chevron still owed him a legal duty on the basis of *Hooker*.[10] In that case, the decedent, a crane operator for the Department of Transportation (Caltrans), would retract the machine's outriggers to allow vehicles to pass. Shortly before the fatal accident, he retracted the outriggers and left the crane. When the decedent returned, he attempted to swing the boom without extending the outriggers, causing the crane to tip over. He was consequently thrown to the pavement and died. His wife, who received workers' compensation benefits for his death, sued Caltrans on the theory that it had negligently exercised the control over the safety conditions at the jobsite. (*Hooker*, *supra*, 27 Cal.4th at pp. 202-203.) In view of the fairness rationale described in *Privette* and its progeny, the Supreme Court held that "a hirer of an independent contractor is not liable to an employee of the contractor merely because the hirer retained control over safety conditions at a worksite …." (*Hooker*, at p. 202.) However, "a hirer is liable to an employee of a contractor insofar as a hirer's exercise of retained control *affirmatively contributed* to the employee's injuries." (*Ibid.*, original italics.) The Court explained:

> "Imposing tort liability on a hirer of an independent contractor when the hirer's conduct has affirmatively contributed to the injuries of the contractor's employee is consistent with the rationale of our decisions in *Privette*, *Toland* and *Camargo* because the liability of the hirer in such a case is *not* "'in essence 'vicarious' or 'derivative' in the sense that it derives from the 'act or omission' of the hired contractor.'" [Citations.] To the contrary, the liability of the hirer in such a case is *direct* in a much stronger sense of that term." (*Id.* at pp. 211-212, fn. omitted, original italics; see also *Kinsman v. Unocal Corp.*, *supra*, 37 Cal.4th at p. 671 ["[W]hen the

---

**10** Chevron argues that Sheffield cannot avail himself of the *Hooker* theory because he did not allege a cause of action for general negligence. We disagree because Sheffield's complaint specified that Chevron's negligent ownership, maintenance, management, and operation of its property resulted in his injury. (*Ante*, p. 3.)

> hirer does not fully delegate the task of providing a safe working environment, but in some manner actively participates in how the job is done, and that participation affirmatively contributes to the employee's injury, the hirer may be liable in tort to the employee."].)

An affirmative contribution may be in the form of "'direction, induced reliance, or other affirmative conduct.'" (*Hooker*, *supra*, 27 Cal.4th at p. 209, citing *Kinney v. CSB Construction, Inc.* (2001) 87 Cal.App.4th 28, 39.) Moreover, "[t]here will be times when a hirer will be liable for its omissions. For example, if the hirer promises to undertake a particular safety measure, then the hirer's negligent failure to do so should result in liability if such negligence leads to an employee injury." (*Hooker*, at p. 212, fn. 3.) Applying this standard, the Court did not find an affirmative contribution because the evidence showed that Caltrans merely permitted vehicles to pass the decedent's job site. It did not order him to retract the outriggers to allow these vehicles to pass. (*Id.* at pp. 214-215.)

Sheffield presents undisputed evidence that Chevron distributed safety literature to Golden State's employees, Chevron's site managers were present on the rig at all times to ensure job safety, and these managers customarily hired a welding company to repair or replace damaged grating whenever they were notified about such problems by Golden State's employees. He also presents undisputed evidence that he informed Chevron's site managers about the worn condition of the two grating sections above the rig's well cellar several days before August 16, 2009, he expected the grating sections to be fixed by the time he returned from leave, and a welder removed one of these sections on August 16, 2009. These facts suggest that Chevron retained control over workplace safety. The key question, however, is whether they raise a triable issue as to whether Chevron exercised this control in a manner that affirmatively contributed to Sheffield's injury. We do not believe so. Although Sheffield notified the site managers about the worn condition of specific grating, the record before us does not demonstrate that Chevron or its agents explicitly promised to perform repairs and then negligently failed to do so. (Cf. *Hooker*,

11.

*supra*, at p. 212, fn. 3.)  To the extent Sheffield claims that an affirmative undertaking may be inferred from Chevron's past practice, his personal expectation, and the removal of a grating section by the welder for the limited purpose of accessing the cellar, we reject the proposition.

Sheffield cites *Tverberg v. Fillner Construction, Inc.* (2012) 202 Cal.App.4th 1439 as supporting authority.  In *Tverberg*, the plaintiff was hired by the defendant's subcontractor to construct a metal canopy at a commercial fuel facility.  The plaintiff sustained an injury when he fell into a hole that was created, under the defendant's direction, to hold a concrete post for a separate project.  (*Id.* at pp. 1442-1443.)  Finding that a triable issue existed as to whether the defendant exercised retained control over workplace safety in a manner that affirmatively contributed to the plaintiff's injury, Division Four of the First Appellate District emphasized that the defendant (1) ordered the digging of the hole, (2) required the plaintiff to work near the hole, (3) informed the plaintiff, who had asked for the hole be covered, that it did not have the proper equipment to do so, (4) determined that the hole did not need to be covered, and (5) ignored the plaintiff's second request to cover the hole.  (*Id.* at p. 1448.)  In the instant case, the record before us does not reflect that Chevron damaged the grating sections, required Sheffield to walk on these sections, or expressly communicated that it would handle repairs and then negligently discharged that undertaking.  At most, Chevron passively permitted an unsafe condition to occur and did not exercise its authority to correct it. (See *Hooker*, *supra*, 27 Cal.4th at pp. 214-215.)

We conclude that Sheffield does not sufficiently establish a triable issue as to whether Chevron owed a legal duty and find that the superior court properly granted summary judgment.

## **DISPOSITION**

The judgment of the superior court is affirmed. Costs on appeal are awarded to respondent.

_____
DETJEN, J.

WE CONCUR:


_____
GOMES, Acting P.J.


_____
POOCHIGIAN, J.