Filed 12/14/20  Ochoa v. T.M Duche Nut Co. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| SYLVIA OCHOA, Individually and as Personal Representative, etc., et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>T.M. DUCHE NUT CO., INC.,<br><br>Defendant and Respondent. | F074947<br><br>(Super. Ct. No. VCU255716)<br><br><br>**ORDER MODIFYING OPINION AND DENYING REHEARING**<br><br>[NO CHANGE IN JUDGMENT] |

**THE COURT:**

It is ordered that the opinion filed herein on November 23, 2020, be modified in the following particulars:

1.  The paragraph commencing at the bottom of page 20 with "The statute in question" and ending at the top of page 21 with "was properly denied.**17**" is modified to read as follows:

    "The statute in question permits the party propounding the RFA's to move for a deemed admitted order when the party responding to said RFA's "fails to serve a *timely* response."  (§ 2033.280, subd. (b), italics added.)  " 'If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs.' [Citation.]"  (*Pineda v. Williams-Sonoma Stores, Inc.* (2011) 51 Cal.4th 524, 530.)  In their briefs, plaintiffs claimed TMD never filed responses.  The record demonstrates these responses were served on June 20, 2016, approximately two months before plaintiffs filed their

motion and nearly three months before the motion hearing.  (Cf. *People v. $2,709 United States Currency* (2014) 231 Cal.App.4th 1278, 1281 [motion filed after defendant failed to respond to RFA's for six months].)  Plaintiffs, however, never claimed these responses were untimely.  Thus, the motion was properly denied.[17]"

There is no change to footnote 17.

There is no change in the judgment.

Appellant's petition for rehearing is denied.

DETJEN, Acting P.J.

WE CONCUR:

MEEHAN, J.

DE SANTOS, J.

2.

Filed 11/23/20  Ochoa v. T.M Duche Nut Co. CA5 (unmodified opinion)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| SYLVIA OCHOA, Individually and as Personal Representative, etc., et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> T.M. DUCHE NUT CO., INC., <br><br> Defendant and Respondent. | F074947 <br><br> (Super. Ct. No. VCU255716) <br><br> **OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tulare County.  Melinda Myrle Reed, Judge.

The McMillan Law Firm, Scott A. McMillan and Lauren Hanley-Brady for Plaintiffs and Appellants.

Lewis Brisbois Bisgaard & Smith, Julian J. Pardini, Jonathan D. Martin, Jeffry A. Miller, Brittany B. Sutton, and W. Eric Blumhardt for Defendant and Respondent.

-ooOoo-

Plaintiffs Sylvia Ochoa and Angie Ruiz appeal from the Tulare County Superior Court's October 19, 2016 judgment entered on an order granting summary judgment in favor of defendant T.M. Duche Nut Co., Inc. (TMD). For the reasons set forth below, we affirm the judgment.

## FACTUAL AND PROCEDURAL HISTORY[1]

Decedent Fernando Santiesteban, Ochoa's husband, was employed by Setton Pistachio of Terra Bella, Inc. (Setton Pistachio) as a maintenance worker at its processing facility in Terra Bella, California. On February 11, 2011, Santiesteban was charged with servicing a 120-foot wet auger, which transported hull waste to a waste pond for composting and disposal. However, while he was in the middle of extricating the auger's helical screw, a coworker activated the machine. Santiesteban was fatally wounded as a result. (See *Setton I*, *supra*, F073844; *Setton II*, *supra*, F073978.)

On July 8, 2015, Ochoa and Ruiz, the guardian ad litem of Santiesteban and Ochoa's children, brought a wrongful death action against TMD, inter alios.[2] In the operative complaint, plaintiffs alleged Setton Pistachio purchased the Terra Bella facility in 1995 "from . . . Dole [Food] through Dole Nut Company, successor by change of name

---

[1] The instant case is related to *Ochoa v. Setton Pistachio of Terra Bella, Inc.* (Apr. 16, 2019, F073844) (*Setton I*) and *Ochoa v. Setton Pistachio of Terra Bella, Inc.* (Apr. 16, 2019, F073978) (*Setton II*). On our own motion, we take judicial notice of these unpublished opinions and draw background facts from them. (See *The Utility Reform Network v. Public Utilities Commission* (2014) 223 Cal.App.4th 945, 951, fn. 3 ["Citation of our prior unpublished opinion does not violate California Rules of Court, rule 8.1115(a) because '[w]e . . . cite the decision to explain the factual background of the case and not as legal authority.' "].)

[2] Plaintiffs also sued Setton Pistachio and Dole Food Company (Dole Food). The superior court granted summary judgment in favor of these defendants and we affirmed the rulings. (See *Setton I*, *supra*, F073844 [Dole Food]; *Setton II*, *supra*, F073978 [Setton Pistachio].)

to . . . T.M. Duch[e] Nut. Co., Inc."[3] and stated on information and belief that TMD "was both a predecessor and successor in interest to Dole Nut Company." Plaintiffs claimed TMD was strictly liable for the Terra Bella wet auger's manufacturing, design, and/or warning defects. They further claimed TMD "created and/or made a part of the [Terra Bella] [f]acility" "the death-causing condition of the [auger]"; negligently owned, possessed, and/or controlled the Terra Bella facility and allowed the condition therein; "actively concealed or failed to disclose . . . the condition to . . . successors in interest in the land," e.g., Setton Pistachio; and "knew or had reason to know of the condition, . . . realized or should have realized the risk involved, and had reason to believe that [successors in interest] would not discover the condition or realize the risk."

In an answer dated November 3, 2015, TMD "generally denie[d] each and every allegation." It also raised 27 affirmative defenses, including the following:

> "**TWENTY-THIRD AFFIRMATIVE DEFENSE TO ALL CAUSES OF ACTION** [¶] [TMD] is informed and believes, and thereon alleges, that the machinery was not in a defective condition at any time when it was in [TMD]'s possession, custody or control."

On May 17, 2016, plaintiffs served a set of requests for admission (RFA's), form and special interrogatories, and requests for production of documents. "[RFA] N[o]. 1" (boldface & underscoring omitted) read:

> "Admit that 'T. M. Duch[e]' has been . . . 'A NAME IN NUTS SINCE 1857.' "

"[RFA] N[o]. 9" (boldface & underscoring omitted) read:

> "Admit that you acquired the 'good will' of the business known as 'T.M. Duch[e]', which is defined as the expectation of continued public patronage . . ."

"[RFA] N[o]. 49" (boldface & underscoring omitted) read:

---

**3**    Setton Properties, Inc., purchased the Terra Bella facility from Dole Food in 1995; Setton Pistachio was the guarantor. (See *Setton II*, *supra*, F073978.)

"Admit that on July 13, 1995, Dole Dried Fruit and Nut Co., Inc., . . . owned the rights to the name 'T.M. Duch[e].' "

Plaintiffs also served a notice of deposition of Stuart Rosen, TMD's chairman and a shareholder. The deposition was scheduled for July 27, 2016.

On June 1, 2016, TMD moved for summary judgment. It contended "there [were] no triable issues of fact regarding the following: (1) [TMD] has never had and does not currently have any corporate relationship with any defendant in this action, (2) [TMD] did not manufacture, design, or sell the subject [w]et [a]uger, and (3) [TMD] has never owned, possessed, or had control over the [Terra Bella] [f]acility or the subject [w]et [a]uger at any time." In support of its motion, TMD submitted Rosen's declaration, inter alia.[4] This declaration, which was executed on May 31, 2016, read:

> "1.      I am a shareholder and the chairman of [TMD]. The facts set forth herein are of my own personal knowledge, and if sworn I could and would competently testify thereto.
>
> "2.      [TMD] was founded and incorporated in California on June 1, 2000. . . .[5] Before we incorporated in California we checked the records of the California Secretary of State, and there was no active entity with the name T.M. Duche Nut Co., Inc. For that reason, we were permitted to incorporate this new entity with that name in California. The Secretary of State records reflected that there has been a prior entity with the name T.M. Duche Nut Co., Inc. ('Former Duche'), but it was no longer in existence and was identified in the Secretary of State records as follows: Date filed: 10/27/1943, Status: Merged Out. [TMD] has no affiliation whatsoever with the Former Duche. [TMD] is therefore a completely separate and unrelated entity from the Former Duche.
>
> "3.      [TMD]'s principal place of business is 1502 Railroad Avenue in Orland, California. [TMD] is in the business of processing walnuts and

---

**4**      TMD also asked the superior court to judicially notice the declarations of Stewart Fellner and Richard Jacobs. Fellner was Setton Pistachio's chief financial officer. Jacobs was the senior counsel of Dole Fresh Vegetables, Inc., a subsidiary of Dole Food.

**5**      A "true and correct copy" of TMD's articles of incorporation filed on June 1, 2000, was attached to the declaration.

4.

almonds and owns a processing plant and several receiving stations throughout California.

"4. On August 7, 2000, [TMD] purchased from Dole Dried Fruit and Nut Company . . . the processing facility located at 1502 Railroad Avenue in Orland in Glenn County and three receiving stations in Butte, Stanislaus and Tulare [C]ounties. . . .[6] The . . . Terra Bella [f]acility . . . where the accident that gave rise to this action occurred, was not included in this transaction. . . . Th[is] transaction was only for real property and there was no continuing relationship between Dole [Dried Fruit and Nut Company] and [TMD] after escrow closed. In addition, at no time during or after its negotiations with respect to the August 2000 transaction did Dole [Dried Fruit and Nut Company] claim a continuing interest in or right to use the name T.M. Duche Nut Co., Inc. after escrow closed.

"5. [TMD] is not a predecessor or successor to any named defendant in this action.

"6. [TMD] has never had and does not currently have an ongoing corporate relationship with any named defendant in this action.

"7. [TMD] has never owned, possessed, or had control over the [Terra Bella] [f]acility.

"8. [TMD] has never owned, possessed, or had control over the wet auger that purportedly contributed to Mr. Santiesteban's death . . . .

"9. [TMD] has never employed any person, including Mr. Santiesteban, at the [Terra Bella] [f]acility at any time.

"10. [TMD] did not design, manufacture, or distribute the subject [w]et [a]uger.

"11. [TMD] is unaware of the identity of the manufacturer and/or designer of the subject [w]et [a]uger.

"12. [TMD] is not in the business of manufacturing wet augers of the kind that purportedly killed Mr. Santiesteban.

---

**6** A "true and correct copy" of a redacted "**PURCHASE AND SALE AGREEMENT AND JOINT ESCROW INSTRUCTIONS**" dated August 7, 2000, was attached to the declaration.

"13. [TMD] is not in the business of distributing wet augers of the kind that purportedly killed Mr. Santiesteban.

"14. [TMD] is not in the business of retailing wet augers of the kind that purportedly killed Mr. Santiesteban.

"15. Because [TMD] has never owned or had control of the [Terra Bella] [f]acility, [TMD] has never had the ability to warn persons entering [said] [f]acility about the subject [w]et [a]uger.

"16. [TMD] has never had access to the [Terra Bella] [f]acility for purposes of inspection, maintenance, and/or repair of any equipment at [said] [f]acility.

"I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct . . . ."[7]

A hearing on the motion was scheduled for September 26, 2016.

On June 20, 2016, TMD served its responses to plaintiffs' written discovery requests. Each response to an RFA contained the text and identifying number of the particular request as well as TMD's answer and/or objections to the request. The answer to RFA No. 1 read:

"Responding Party objects that this request is vague and ambiguous as to the phrase 'A NAME IN NUTS SINCE 1857.' Responding Party objects [to] this request as it does not properly define the term 'T.M. Duche.' Subject to and without waiving the foregoing objections, Responding Party responds as follows: Responding Party was founded and incorporated in 2000 and is without information or knowledge sufficient to respond to any details relating to any time period prior to the year 2000."

The answer to RFA No. 9 read:

"Responding Party objects that the term[s] 'acquired' and 'good will' [are] vague, ambiguous, and undefined. Responding Party further objects that this request is compound, and vague and ambiguous as to time and scope. Responding Party was allowed by the California Secretary of State to incorporate in California in 2000 using the name T.M. Duche Nut Co., Inc. and therefore did not 'acquire' anything by way of incorporation

---

[7] Hereafter, to avoid confusion, we use the designation "former Duche" to refer to the business that incorporated in 1943.

f[ro]m any person or entity. Responding Party further objects that this request calls for a legal conclusion. Subject to and without waiving the foregoing objections, Responding Party responds as follows: Responding Party cannot respond to this request as phrased and on that basis denies this request in its entirety."

The answer to RFA No. 49 read:

"Subject to and without waiving the foregoing objections, Responding Party responds as follows: Responding Party is without sufficient personal knowledge to respond to this request as Responding Party was not founded or incorporated until the year 2000. Responding Party has been made aware of certain evidence that may be probative to this request during discovery in this action. This information is equally available to plaintiffs."

While TMD answered and/or objected to RFA Nos. 76 through 113, the identifying numbers were off by one. For instance, RFA No. 77 and the corresponding answer were labeled "76," RFA No. 78 and the corresponding answer were labeled "77," and so on.[8] (Boldface & underscoring omitted.)

On July 27, 2016, plaintiffs filed an "*EX PARTE* **APPLICATION TO CONTINUE THE SEPTEMBER 26, 2016 HEARING ON [TMD's] MOTION FOR SUMMARY JUDGMENT** . . . ." They requested a continuance pursuant to Code of Civil Procedure section 437c, subdivision (h)[9] "to allow [them] to conduct discovery, including the deposition of . . . Rosen . . . and compel responses to written discovery . . . ." Plaintiffs claimed TMD "ha[d] not made Mr. Rosen available for deposition" and "failed to respond to many of [their] discovery requests." Following a hearing, the superior court denied the application "due to no good cause having been shown."[10]

---

[8] TMD correctly identified RFA No. 76, but the corresponding answer was labeled "75." (Boldface & underscoring omitted.)

[9] Subsequent statutory citations refer to the Code of Civil Procedure.

[10] The court reasoned:

"It appears as though [TMD] is more than willing to present the deposition of Mr. [Rosen]. It was canceled due to weather. That's clear from the papers. And parties are doing their best to reschedule. [¶]

On August 18, 2016, plaintiffs moved to compel further responses to their discovery requests on the grounds TMD's answers and/or objections were "evasive," "incomplete," "without merit," and/or "too general."

Rosen was deposed on August 25, 2016.

On August 18, 2016, plaintiffs filed a "**MOTION FOR AN ORDER DEEMING ADMITTED TRUTH OF FACTS**," namely, the matters specified in RFA Nos. 79 through 113, pursuant to section 2033.280, subdivision (b).

On September 12, 2016, plaintiffs filed "**OBJECTIONS TO DECLARATION OF STUART ROSEN**," citing relevance, hearsay, and lack of foundation, inter alia.

In their opposition to the summary judgment motion dated September 12, 2016, plaintiffs asserted TMD's answer to their complaint contained a judicial admission, namely, TMD possessed or controlled the Terra Bella wet auger. Additionally, they argued TMD was liable "as a successor entity" "for defective equipment sold by former . . . Duche." (Boldface omitted.)[11] Plaintiffs specified former Duche "designed,"

---

[Plaintiffs' counsel] indicated [he's] open for the August 31, 2016 date. I direct parties to move forward with the deposition on that date or as otherwise agreed."

[11] Elsewhere in the opposition, plaintiffs described TMD as "a successor entity of . . . former . . . Duche . . . *and* Dole Dried Fruit & Nut Co., Inc., which is dissolved." (Italics added.) Plaintiffs alleged the following:

"Former . . . Duche was incorporated on October 27, 1943. . . . By 1987, it was a wholly owned subsidiary of S & J Ranch, Inc. . . . S & J Ranch, Inc. was entirely owned by the Apache Corporation. . . . [¶] . . . [¶]

"On September 29, 1987, . . . the predecessor to Dole Food Company . . . entered into a purchase agreement with Apache Corporation. . . . As part of the transaction, Apache sold the stock of S & J Ranch, and thereby that of [former] Duch[e] . . . to Dole Food Company. . . . [¶] . . . [¶]

"In 1988, former . . . Duche changed its name to Dole Nut Company. . . . In 1989, [a separate] subsidiary of Dole Food Company . . . changed its name to Dole Dried Fruit and Nut Company . . . . [¶] . . . [¶]

8.

"manufactured," and "sold screw conveyors by way of its . . . sales of [nut processing] plants . . . ." (Boldface omitted.) To support this proposition, they submitted Dole Food's 1994, 1995, and 2000 annual reports filed with the United States Securities and Exchange Commission. The 1994 report stated Dole Food "and its consolidated subsidiaries" "engaged in three principal businesses: food production and distribution, real estate development and resorts." (Underscoring omitted.) The 1995 report indicated the company was no longer involved in real estate development and resorts as of December 28, 1995. Each report contained a section titled "Research and Development," which read in part:

> "Specialized machinery is also developed for various phases of agricultural production and packaging which reduces labor, improves productivity and efficiency and increases product quality. Agricultural research is conducted at field facilities primarily in California, Hawaii, Latin America and Asia." (Underscoring omitted.)

Plaintiffs also submitted (1) an August 15, 1995 "**DEED OF ASSIGNMENT OF UNITED STATES PATENTS**," under which Dole Dried Fruit and Nut Company transferred to Setton Properties, Inc. its "entire right, title and interest in and to" four particular patents, two for "Apparatus[es] for Splitting Closed Shell Pistachio Nuts" and two for "Method[s] for Splitting Closed Shell Pistachio Nuts"; and (2) an August 15,

---

"Setton Properties, Inc. purchased the Terra Bella facility from Dole Dried Fruit and Nut [Company] and Dole Nut Company on July 13, 1995 . . . .

"On October 15, 1995, Dole Nut Company and Dole Dried Fruit and Nut [Company] created a partnership . . . . On December 7, 1995, Dole Dried Fruit and Nut [Company] dissolved. . . .

"On January 30, 1998, Dole Nut Company changed its name to Dole Orland, Inc. . . . In or around 1998, [the] partnership filed a fictitious business name statement reflecting use of the name 'Dole Nut Company.'. . . [¶] . . . [¶]

"[The] partnership transferred property in Glenn, Butte, Tulare, and Stanislaus [C]ount[ies] to [TMD] on or around August 23, 2000. . . ."

9.

1995 "**SECURITY AGREEMENT**" between Setton Properties, Inc., and Dole Dried Fruit and Nut Company.  The security agreement's "Tangible Personal Property" schedule showed a November 1, 1987 "**ACQUISITION [¶] DATE**" for almost 300 pieces of machinery equipment, including a "18inX120ft SECT TRENCH & COVER" matching the description of the Terra Bella wet auger.

Next, plaintiffs argued TMD "can be held liable for negligence" (boldface omitted) because its "predecessor" "concealed or failed to disclose a condition [at the Terra Bella facility] which it knows or has reason to know about," "the condition involves an unreasonable risk that the [predecessor] understands or should realize," "the condition/risk was unknown to the vendee (Setton [Pistachio])," and "the [predecessor] had reason to believe the vendee . . . will not discover the condition/risk."

In paragraph 20 of an accompanying declaration, plaintiffs' counsel claimed (1) he "issued subpoenas for the production of documents" in June 2016 to various title companies that "handled some portion of the escrow with [TMD] and its transaction with the Dole [entities]"; (2) only one title company "was able to provide responsive documents"; (3) "[t]he other title companies . . . destroyed their records"; and (4) TMD "is the only source for the documents reflecting the purchase of assets from the Dole entities."

Plaintiffs again requested a continuance pursuant to section 437c, subdivision (h) "because [TMD] withheld substantive responses to [their written discovery] requests and the responses provided were wholly inadequate under the Civil Discovery Act."  They maintained "additional discovery . . . may provide facts to justify the opposition of [TMD]'s [m]otion for [s]ummary [j]udgment," such as TMD's admission that it "inherited the goodwill of [former Duche]" and "escrow documents and unredacted

10.

copies of the transaction" evincing TMD's "successor interest." Plaintiffs also asked the superior court to judicially notice various chain-of-title documents.[12]

Following hearings on September 12 and 19, 2016, the superior court (1) granted plaintiffs' motion to compel further responses as to RFA No. 9 and—"to the extent any documents are in [TMD]'s possession and control"—RFA No. 49; and (2) denied plaintiffs' motion for a "deem[ed] admitted" order but instructed TMD "to provide a corrected response to [RFA Nos.] 76 through 113 with the appropriate numbers assigned."

On September 21, 2016, TMD objected to plaintiffs' counsel's declaration. Among other things, TMD argued paragraph 20 lacked relevance and foundation and was speculative.

On September 23, 2016, the superior court overruled plaintiffs' objections to Rosen's declaration. The court sustained TMD's objection to plaintiffs' counsel's declaration as to the portion of paragraph 20 referring to "other title companies . . . destroy[ing] their records" and TMD being "the only source for the documents reflecting the purchase of the assets from the Dole entities."

On September 26, 2016, the superior court granted TMD's summary judgment motion. The court also denied plaintiffs' motion to continue the summary judgment hearing; granted plaintiffs' request for judicial notice "as to the existence of the documents only, and not for the truth of the facts asserted in the documents"; and determined TMD's 23d affirmative defense in its answer to the complaint did not constitute a judicial admission.

---

[12] TMD filed a reply to plaintiffs' opposition.

## DISCUSSION

### I.    Overview of summary judgment law

Summary judgment "provide[s] courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*); see *Lee v. Marchetti* (1970) 4 Cal.App.3d 97, 99 [" 'The salient philosophy behind this procedural device is to provide a method for the prompt disposition of actions and proceedings which have no merit and in which there is no triable material issue of fact . . . .' " (italics omitted)].) A motion for summary judgment "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In determining if the papers show that there is no triable issue as to any material fact, the court shall consider all of the evidence set forth in the papers, except the evidence to which objections have been made and sustained by the court, and all inferences reasonably deducible from the evidence, except summary judgment shall not be granted by the court based on inferences reasonably deducible from the evidence if contradicted by other inferences or evidence that raise a triable issue as to any material fact." (§ 437c, subd. (c).)

A defendant seeking summary judgment bears an initial burden to produce evidence demonstrating either one or more elements of the cause of action cannot be established or there is a complete defense to that cause of action. (§ 437c, subd. (p)(2); *Aguilar*, *supra*, 25 Cal.4th at pp. 849-850, 854-855.) If the motion is made against a plaintiff who would bear the burden of proof by a preponderance of evidence at trial, the defendant "must present evidence that would require a reasonable trier of fact not to find any underlying material fact more likely than not—otherwise, he would not be entitled to judgment as a matter of law, but would have to present his evidence to a trier of fact." (*Aguilar*, *supra*, at p. 851, italics & fn. omitted.) If the defendant makes a prima facie

12.

showing, then the burden of production "shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to the cause of action or a defense thereto." (§ 437c, subd. (p)(2).) "The plaintiff . . . shall not rely upon the allegations or denials of its pleadings to show that a triable issue of material fact exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to the cause of action or a defense thereto." (*Ibid*.) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar*, *supra*, at p. 850, fn. omitted.)

"[F]rom commencement to conclusion, the party moving for summary judgment bears the burden of persuasion[13] that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Aguilar*, *supra*, 25 Cal.4th at p. 850, fn. omitted.)

## II. Overview of pertinent substantive law

### a. *Products liability*

#### i. Strict products liability

"Where a defective or dangerous product causes personal injury, death or property damage to a foreseeable user or consumer, one who is engaged in the business of manufacturing or selling products for use or consumption and who placed the defective or dangerous product on the market, knowing it was to be used without inspection for defects, will be held strictly liable in tort." (*Pierson v. Sharp Memorial Hospital, Inc.* (1989) 216 Cal.App.3d 340, 343.) "[S]trict liability does not apply to isolated transactions, but rather to sellers 'found to be in the business of manufacturing or retailing.' " (*Ortiz v. HPM Corp.* (1991) 234 Cal.App.3d 178, 187 (*Ortiz*), quoting *Price*

---

**13** Whereas a burden of production entails only the presentation of evidence, a burden of persuasion entails the establishment of a requisite degree of belief by way of such evidence. (*Aguilar*, *supra*, 25 Cal.4th at p. 850.)

13.

*v. Shell Oil Co.* (1970) 2 Cal.3d 245, 254; see *Hyman v. Gordon* (1973) 35 Cal.App.3d 769, 773-774 (*Hyman*) ["[T]he strict liability doctrine applies to a 'seller . . . engaged in the business of selling such a product' rather than to the occasional seller who is not engaged in that activity as part of his business . . . ."].)

    ii. <u>Negligence-based products liability</u>

  " 'For the cause of action for strict products liability there is no necessity to show duty or breach of duty but only that the product was defective and that the injury to the plaintiff was caused by that defective condition.' [Citation.] In contrast, to prevail on a negligence claim, [the plaintiff] must show that [the defendant] owed her a legal duty, breached the duty, and that the breach was a proximate or legal cause of her injury. [Citation.] In the context of a products liability lawsuit, '[u]nder a negligence theory, a plaintiff must also prove "an additional element, namely, that the defect in the product was due to negligence of the defendant." ' [Citation.]" (*Gonzalez v. Autoliv ASP, Inc.* (2007) 154 Cal.App.4th 780, 793.)

  b. *Premises liability*

  "The elements of a negligence claim and a premises liability claim are the same: a legal duty of care, breach of that duty, and proximate cause resulting in injury." (*Kesner v. Superior Court* (2016) 1 Cal.5th 1132, 1158.) "[T]he duty to take affirmative action for the protection of individuals coming upon the land is grounded in the possession of the premises and the attendant right to control and manage the premises." (*Sprecher v. Adamson Companies* (1981) 30 Cal.3d 358, 368.)

  A predecessor landowner's liability terminates "upon transfer of control, i.e., the doctrine of caveat emptor is generally followed, except under specified circumstances. [Citation.] One of the exceptions ' "is that the vendor is under a duty to disclose to the vendee any hidden defects which he knows or should know may present an unreasonable risk of harm to persons on the premises, and which he may anticipate that the vendee will

not discover." ' [Citation.]" (*Newhall Land & Farming Co. v. Superior Court* (1993) 19 Cal.App.4th 334, 349.)

 c. *Successor liability*

 "The general rule of successor nonliability provides that where a corporation purchases, or otherwise acquires by transfer, the assets of another corporation, the acquiring corporation does not assume the selling corporation's debts and liabilities." (*Fisher v. Allis-Chalmers Corp. Product Liability Trust* (2002) 95 Cal.App.4th 1182, 1188 (*Fisher*), citing *Ray v. Alad Corp.* (1977) 19 Cal.3d 22, 28 (*Ray*).) "This general rule does not apply if '(1) there is an express or implied agreement of assumption, (2) the transaction amounts to a consolidation or merger of the two corporations, (3) the purchasing corporation is a mere continuation of the seller, or (4) the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts.' " (*Fisher*, *supra*, at p. 1188, quoting *Ray*, *supra*, at p. 28.)

 "A fifth exception to the general rule of successor nonliability was created by the Supreme Court in *Ray* . . . ." (*Fisher*, *supra*, 95 Cal.App.4th at p. 1188.) In *Ray*, the high court concluded "that a party which acquires a manufacturing business and continues the output of its line of products . . . assumes strict tort liability for defects in units of the same product line previously manufactured and distributed by the entity from which the business was acquired." (*Ray*, *supra*, 19 Cal.3d at p. 34; see *ibid.* ["By taking over and continuing the established business of producing and distributing [products], [the purchasing entity] bec[o]me[s] 'an integral part of the overall producing and marketing enterprise that should bear the cost of injuries resulting from defective products.' "].) "Justification for imposing strict liability upon a successor to a manufacturer . . . rests upon (1) the virtual destruction of the plaintiff's remedies against the original manufacturer caused by the successor's acquisition of the business, (2) the successor's ability to assume the original manufacturer's risk-spreading role, and (3) the fairness of requiring the successor to assume a responsibility for defective products that was a

burden necessarily attached to the original manufacturer's good will being enjoyed by the successor in the continued operation of the business." (*Id.* at p. 31, italics omitted.) This exception, known as the " 'product line successor' rule" (*Fisher*, *supra*, at p. 1188), applies only to strict products liability claims. (*Franklin v. USX Corp.* (2001) 87 Cal.App.4th 615, 628-629; *Monarch Bay II v. Professional Service Industries, Inc.* (1999) 75 Cal.App.4th 1213, 1217-1219; *Maloney v. American Pharmaceutical Co.* (1988) 207 Cal.App.3d 282, 289-290.)

## III. Analysis

### a. *TMD's answer to plaintiffs' complaint*

"The pleadings are the formal allegations by the parties of their respective claims and defenses, for the judgment of the court." (§ 420.) "The pleadings allowed in civil actions are complaints, demurrers, answers, and cross-complaints." (§ 422.10.) "A civil action is commenced by filing a complaint with the court." (§ 411.10.) "Every material allegation of the complaint . . . , not controverted by the answer, shall, for the purposes of the action, be taken as true." (§ 431.20, subd. (a); see § 431.10, subd. (a) ["A material allegation in a pleading is one essential to the claim or defense and which could not be stricken from the pleading without leaving it insufficient as to that claim or defense."].) "An answer may contain a 'general . . . denial of the material allegations of the complaint controverted by the defendant.' [Citation.] The effect of a general denial is to 'put in issue the material allegations of the complaint.' [Citation.]" (*Advantec Group, Inc. v. Edwin's Plumbing Co., Inc.* (2007) 153 Cal.App.4th 621, 627, fn. omitted.)

On appeal, plaintiffs contend (1) in its answer, TMD conceded the Terra Bella wet auger was in its "possession, custody or control"; and (2) the superior court should have treated this response as a judicial admission. We disagree. First, at the outset of its answer, TMD "generally denie[d] each and every allegation" of plaintiffs' complaint. This "was sufficient to place [these allegations] in issue." (*Park City Services, Inc. v.*

*Ford Motor Co., Inc.* (2006) 144 Cal.App.4th 295, 309.)**14**  Second, the purported admission was part of the answer's 23d affirmative defense.  " ' "[I]t is well settled in California that a defendant may plead as many inconsistent defenses in an answer as she may desire and that such defenses may not be considered as admissions against interest in the action in which the answer was filed.  [Citations.]" [Citations.]' [Citations.]" (*Park City Services, Inc. v. Ford Motor Co., Inc.*, *supra*, at p. 309.)  "[T]he fact that defendant in the instant case denied certain material allegations of the complaint in his answer and subsequently in an affirmative defense alleged the same material allegations of the complaint as true, did not constitute an admission of the truth of the allegations in the complaint.  He was merely pleading inconsistent defenses." (*Edger v. Foster* (1941) 48 Cal.App.2d 580, 583; see *Southern Glass Co. v. Beverly Dairies, Ltd.* (1935) 7 Cal.App.2d 451, 454 ["[W]here one separate answer denies all of the allegations of plaintiff's complaint, plaintiff is not excused from making proof of the material facts because of admissions of some or all of them found in other and separate answers of the defendant."].)

     b.  *Rosen's declaration in support of TMD's summary judgment motion*

"Summary judgment law . . . require[s] a defendant moving for summary judgment to present evidence, and not simply point out that the plaintiff does not possess, and cannot reasonably obtain, needed evidence. . . .  [T]he defendant *must* 'support[]' the 'motion' with evidence including 'affidavits, declarations, admissions, answers to interrogatories, depositions, and matters of which judicial notice' must or may 'be taken.' [Citation.]  The defendant may, but need not, present evidence that conclusively negates an element of the plaintiff's cause of action.  The defendant may also present evidence

---

**14**    *Valerio v. Andrew Youngquist Construction* (2002) 103 Cal.App.4th 1264, which was cited by plaintiffs in their brief, is factually inapposite.  In that case, the respondent's answer to a cross-complaint did not contain a general denial or otherwise refute the material allegation in question.  (See *id.* at pp. 1267-1268.)

that the plaintiff does not possess, and cannot reasonably obtain, needed evidence . . . . But . . . the defendant *must* indeed present evidence . . . ." (*Aguilar*, *supra*, 25 Cal.4th at pp. 854-855, fns. omitted.) "The same rules of evidence that apply at trial also apply to the declarations submitted in support of and in opposition to motions for summary judgment. Declarations must show the declarant's personal knowledge and competency to testify, state facts and not just conclusions, and not include inadmissible hearsay or opinion." (*Bozzi v. Nordstrom, Inc.* (2010) 186 Cal.App.4th 755, 761; accord, § 437c, subd. (d).)

On appeal, plaintiffs contend Rosen's declaration "failed to affirmatively establish personal knowledge of the facts attested to as required by section 437c[, subdivision ](d)." In general, "we review the trial court's final rulings on evidentiary objections by applying an abuse of discretion standard." (*Powell v. Kleinman* (2007) 151 Cal.App.4th 112, 122; see *Alexander v. Scripps Memorial Hospital La Jolla* (2018) 23 Cal.App.5th 206, 226 [weight of authority holds appellate court reviews trial court's rulings on evidentiary objections made in connection with summary judgment motion for abuse of discretion]; *Howard Entertainment, Inc. v. Kudrow* (2012) 208 Cal.App.4th 1102, 1122-1123 (conc. opn. of Turner, P.J.) [same].) "[E]videntiary objections based on lack of foundation . . . are traditionally left to the sound discretion of the trial court." (*Alexander v. Scripps Memorial Hospital La Jolla*, *supra*, at p. 226.) "As the parties challenging the court's decision, it is plaintiffs' burden to establish such an abuse, which we will find only if the trial court's order exceeds the bounds of reason." (*DiCola v. White Brothers Performance Products, Inc.* (2008) 158 Cal.App.4th 666, 679.) Here, we find no abuse of discretion. Under penalty of perjury, Rosen—in his position as TMD's chairman and a shareholder—averred the facts stated in his declaration were true and correct, based on personal knowledge of the company's operations and/or review of relevant records. (See *Butte Fire Cases* (2018) 24 Cal.App.5th 1150, 1169; *People ex rel. Owen v. Media One Direct, LLC* (2013) 213 Cal.App.4th 1480, 1484.) "The trial court was entitled to accept

18.

these assertions of personal knowledge." (*Butte Fire Cases*, *supra*, at p. 1169, fn. omitted.)[15]

   c.   *TMD's motion for an order deeming admitted truth of facts*

   "If a party to whom [RFA's] are directed fails to serve a timely response, . . . [¶] . . . [¶] . . . [t]he requesting party may move for an order that the genuineness of any documents and the truth of any matters specified in the requests be deemed admitted . . . ." (§ 2033.280, subd. (b).)  "The court shall make this order, unless it finds that the party to whom the [RFA's] have been directed has served, before the hearing on the motion, a proposed response to the [RFA's] that is in substantial compliance with [s]ection 2033.220.[16]"  (§ 2033.280, subd. (c).)  " ' "Substantial compliance . . . means actual compliance in respect to the substance essential to every reasonable objective of the statute." [Citation.]  Where there is compliance as to all matters of substance[,] technical deviations are not to be given the stature of noncompliance.  [Citation.]

---

**15** Plaintiffs also argue the superior court erroneously considered the declarations of Fellner and Jacobs.  We conducted a de novo review of TMD's summary judgment motion and reached our holding without taking these challenged declarations into account.  (See at pp. 21-24, *post*.)

**16** Section 2033.220 provides:

"(a) Each answer in a response to [RFA's] shall be as complete and straightforward as the information reasonably available to the responding party permits.

"(b) Each answer shall:  [¶]  (1) Admit so much of the matter involved in the request is true, either as expressed in the request itself or as reasonably and clearly qualified by the responding party.  [¶]  (2) Deny so much of the matter involved in the request is untrue.  [¶]  (3) Specify so much of the matter involved in the request as to the truth of which the responding party lacks sufficient information or knowledge.

"(c) If a responding party gives lack of information or knowledge as a reason for a failure to admit all or part of a [RFA], that party shall state in the answer that a reasonable inquiry concerning the matter in the particular request has been made, and that the information known or readily obtainable is insufficient to enable that party to admit the matter."

Substance prevails over form.' [Citations.]" (*St. Mary v. Superior Court* (2014) 223 Cal.App.4th 762, 779 (*St. Mary*).) The language of section 2033.280, subdivision (c) "suggests that the court evaluate qualitatively the proposed response to RFA[']s in toto to determine whether it substantially complies with the code. It does not permit the court to segregate each individual RFA response for the purpose of finding that portions of the document are code compliant (and will therefore be accepted), while concluding that other portions are noncompliant (and will thus be rejected)." (*St. Mary*, *supra*, 223 Cal.App.4th at pp. 779-780.)

On appeal, plaintiffs contend the superior court should have granted their motion for an order deeming admitted the truth of the matters specified in RFA Nos. 76 through 113 because TMD's answers thereto were "offset," i.e., improperly numbered. "Discovery orders are generally reviewed for abuse of discretion." (*St. Mary*, *supra*, 223 Cal.App.4th at p. 772; see *Denham v. Superior Court* (1970) 2 Cal.3d 557, 566 [" 'Discretion is abused whenever, in its exercise, the court exceeds the bounds of reason, all of the circumstances before it being considered.' "].) "Moreover, . . . we review the trial court's actual ruling, not its reasons. We therefore will affirm an order correct in theory, even where the court's reasoning is erroneous." (*RiverWatch v. County of San Diego Dept. of Environmental Health* (2009) 175 Cal.App.4th 768, 776; accord, *Davey v. Southern Pacific Co.* (1897) 116 Cal. 325, 329.)

The statute in question permits the party propounding the RFA's to move for a deemed admitted order when the party responding to said RFA's "fails to serve a *timely* response." (§ 2033.280, subd. (b), italics added.) " 'If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs.' [Citation.]" (*Pineda v. Williams-Sonoma Stores, Inc.* (2011) 51 Cal.4th 524, 530.) In their briefs, plaintiffs never claim TMD's responses were untimely. The record demonstrates these responses were served on June 20, 2016, approximately two months before plaintiffs filed their motion and nearly three months before the motion

20.

hearing.  (Cf. *People v. $2,709 United States Currency* (2014) 231 Cal.App.4th 1278, 1281 [motion filed after defendant failed to respond to RFA's for six months].)  Thus, the motion was properly denied.[17]

d.  *Summary judgment motion*

"[A]s the reviewing court, we determine de novo whether an issue of material fact exists and whether the moving party was entitled to summary judgment as a matter of law.  [Citation.]  In other words, we must assume the role of the trial court and reassess the merits of the motion.  [Citation.]  In doing so, we will consider only the facts properly before the trial court at the time it ruled on the motion.  [Citation.]"  (*Brantley v. Pisaro* (1996) 42 Cal.App.4th 1591, 1601.)  "We apply the same three-step analysis required of the trial court.  First, we identify the issues framed by the pleadings since it is these allegations to which the motion must respond.  Second, we determine whether the moving party's showing has established facts which negate the opponent's claim and justify a judgment in the moving party's favor.  When a summary judgment motion prima facie justifies a judgment, the third and final step is to determine whether the opposition demonstrates the existence of a triable issue of material fact."  (*Hutton v. Fidelity National Title Co.* (2013) 213 Cal.App.4th 486, 493-494.)

In his declaration, Rosen attested TMD (1) was founded and incorporated on June 1, 2000, and "completely separate and unrelated" to former Duche; (2) in 2000, purchased from Dole Dried Fruit and Nut Company only real property in Glenn, Butte, Stanislaus, and Tulare Counties; (3) never acquired the Terra Bella facility; (4) was in the business of processing walnuts and almonds; (5) was not in the business of manufacturing, retailing, or distributing wet augers; (6) did not manufacture, design,

---

**17**    We point out TMD answered the RFA's in chronological order and each response contained the text of the particular request, rendering innocuous the numbering errors in its responses to RFA Nos. 76 through 113.  In addition, the responses as a whole substantially complied with section 2033.220.

distribute, own, possess, or have control over the Terra Bella wet auger; (7) did not know the identity of the Terra Bella auger's manufacturer and/or designer; (8) did not own, possess, have control over, have access to, or employ anyone at the Terra Bella facility; and (9) was "not a predecessor or successor to" and "never had . . . an ongoing corporate relationship with" "any named defendant in this action," e.g., Dole Food and Dole Nut Company. Hence, TMD satisfied its initial burden of production and established a prima facie case that it (1) was not engaged in the business of manufacturing, designing, or distributing wet augers; (2) neither manufactured, designed, nor otherwise controlled the Terra Bella wet auger, (3) neither owned, possessed, nor otherwise controlled the Terra Bella facility itself; and (4) was neither a predecessor or successor in interest to former Duche, Dole Food, Dole Nut Company, or a related entity. We must now decide whether plaintiffs produced evidence demonstrating the existence of a triable issue of material fact. We conclude they did not.

### i. No triable issue as to whether TMD assumed the liability of a company engaged in the business of manufacturing, designing, or selling wet augers

Plaintiffs did not provide evidence showing TMD itself manufactured, designed, or sold the Terra Bella wet auger or wet augers in general. However, they alleged TMD was liable as the "successor entity" of former Duche and/or Dole Food, whose predecessor had purchased former Duche in 1987. Even assuming, arguendo, TMD constituted such an entity, plaintiffs must nonetheless produce evidence demonstrating former Duche and/or Dole Food were engaged in the business of manufacturing, designing, and/or selling wet augers. Here, there was evidence that Dole Food (1) engaged in real estate development until December 28, 1995; (2) developed specialized machinery "for various phases of agricultural production and packaging which reduces labor, improves productivity and efficiency and increases product quality"; (3) patented apparatuses and methods for splitting closed shell pistachio nuts; and (4) in 1987,

22.

acquired almost 300 pieces of machinery, including the Terra Bella wet auger. None of these, however, showed either former Duche or Dole Food was "engaged in the business of manufacturing or selling [wet augers] for use or consumption and . . . placed the [Terra Bella wet auger] on the market . . . ." (*Pierson v. Sharp Memorial Hospital, Inc.*, *supra*, 216 Cal.App.3d at p. 343; see *Stein v. Southern Cal. Edison Co.* (1992) 7 Cal.App.4th 565, 569 ["[A] product must be . . . placed in the stream of commerce . . . for imposition of strict liability . . . ."].)[18]

Since there is no triable issue as to whether former Duche or Dole Food manufactured and/or designed the Terra Bella wet auger or was engaged in the business of manufacturing, designing, and/or selling wet augers,[19] plaintiffs cannot prevail on their causes of action for strict products liability (see *Ortiz*, *supra*, 234 Cal.App.3d at p. 187; *Hyman*, *supra*, 35 Cal.App.3d at pp. 773-774) or negligence-based products liability (see *Gonzalez v. Autoliv ASP, Inc.*, *supra*, 154 Cal.App.4th at p. 793 [negligence theory of products liability subsumes elements for strict products liability]).

ii. No triable issue as to whether TMD owned, possessed, or otherwise controlled the Terra Bella facility

" '[A] defendant cannot be held liable for the [allegedly] defective or dangerous condition of property which it did not own, possess, or control. Where the absence of ownership, possession, or control has been unequivocally established, summary judgment is proper. [Citations.]' [Citation.]" (*Preston v. Goldman* (1986) 42 Cal.3d 108, 119.) The record before us demonstrates Setton Properties, Inc., purchased the Terra Bella facility from a subsidiary of Dole Food in 1995, five years before TMD filed its articles

---

[18] While there does not appear to be a dispute that Dole Food—through a subsidiary—sold the Terra Bella facility and the accompanying wet auger to Setton Properties, Inc. in 1995, strict liability does not apply to a seller unless the seller is engaged in the business of selling the purportedly defective product. (See *Ortiz*, *supra*, 234 Cal.App.3d at p. 187; *Hyman*, *supra*, 35 Cal.App.3d at pp. 773-774.)

[19] We reached this conclusion with respect to Dole Food in *Setton I*, *supra*, F073844.

23.

of incorporation. Plaintiffs did not provide evidence showing TMD ever owned, possessed, or otherwise controlled the Terra Bella facility following that sale. Instead, they argued TMD was liable because its "predecessor" concealed or failed to disclose a dangerous condition, i.e., the Terra Bella wet auger. In their opening brief, plaintiffs contend TMD "inherited Dole[ Food]'s negligence liability upon purchase of . . . former . . . Duch[e]'s goodwill from Dole [Foods]" (some capitalization omitted) and cite *Ray*, *supra*, 19 Cal.3d 22 as supporting authority. As noted, however, *Ray*'s product line successor rule applies only to strict products liability claims. (*Franklin v. USX Corp.*, *supra*, 87 Cal.App.4th at pp. 628-629; *Monarch Bay II v. Professional Service Industries, Inc.*, *supra*, 75 Cal.App.4th at pp. 1217-1219; *Maloney v. American Pharmaceutical Co.*, *supra*, 207 Cal.App.3d at pp. 289-290.)[20] Plaintiffs cannot prevail on their cause of action for premises liability. [21]

e. *Plaintiffs' other claims of evidentiary error*

On appeal, plaintiffs contend the superior court "erroneously excluded" (1) "plaintiff[s'] counsel's statement in declaration that [TMD] had critical documents," i.e., documents related to TMD's " 'purchase of the assets from the Dole entities' "; and (2) "chain of title documents though [plaintiffs] properly requested judicial notice of recorded documents." (Some capitalization omitted.)

" 'A trial court's exercise of discretion in admitting or excluding evidence is reviewable for abuse [citation] and will not be disturbed except on a showing the trial

---

[20] Even assuming, arguendo, TMD was subject to another exception to successor nonliability (see *ante*, at pp. 15-16), in *Setton I*, *supra*, F073844, we found no triable issue as to whether Dole Food owned, possessed, or otherwise controlled the Terra Bella facility.

[21] On appeal, plaintiffs complain the superior court "improperly considered . . . TMD's new, improper evidence and arguments on reply regarding the motion for summary judgment." (Some capitalization omitted.) As shown above, we conducted a de novo review of TMD's summary judgment motion and reached our holding without taking this challenged evidence into account.

24.

court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.' [Citation.]" (*Christ v. Schwartz* (2016) 2 Cal.App.5th 440, 446-447.) "Claims of evidentiary error under California law are reviewed for prejudice applying the 'miscarriage of justice' or 'reasonably probable' harmless error standard . . . . Under [this] standard, it is the burden of appellants to show that it is reasonably probable that they would have received a more favorable result . . . had the error not occurred. [Citations.]" (*Id.* at p. 447.)

Even assuming, arguendo, the court erred, we cannot conclude there was a reasonable probability TMD's summary judgment motion would have been defeated: plaintiffs still failed to produce evidence demonstrating former Duche and/or Dole Food were engaged in the business of manufacturing, designing, and/or selling wet augers.

f.  *Plaintiffs' other claims of errors relating to discovery*

On appeal, plaintiffs assert the superior court "fail[ed] to enforce the Discovery Act with respect to [their] written discovery . . . ." (Some capitalization omitted.) Specifically, the court (1) did not grant their motion to compel further responses as to RFA No. 1, which allegedly concerned whether TMD acquired former Duche's goodwill; (2) granted said motion as to RFA No. 49 with the qualifying language "to the '. . . extent any documents are in [TMD]'s possession and control' "; and (3) did not continue the summary judgment hearing after it granted said motion in part "despite the fact that the additional discovery had not been produced prior to [this] hearing." Plaintiffs reiterate their "theory of the case is that . . . TMD was—if not the entity that designed the [Terra Bella facility] and caused the dangerous condition which killed Fernando Santiesteban— the successor-in-interest to the defunct Dole sub-entities that sold the goodwill of . . . [f]ormer . . . Duch[e] . . . ."

Plaintiffs also assert the court erroneously and prejudicially denied multiple requests to continue the summary judgment hearing because they "demonstrated an inability to obtain essential evidence directly proving . . . TMD was a successor in

25.

interest to the assets and liabilities of . . . [f]ormer . . . Duch[e]," including unredacted escrow documents that "could show the holding, sale, or intent to transfer interest in the residual goodwill of . . . [f]ormer . . . Duch[e] . . . to . . . TMD," and were "essentially penalized" "for failing to provide the very evidence they were denied time to seek in discovery."

"Management of discovery generally lies within the sound discretion of the trial court." (*Lipton v. Superior Court* (1996) 48 Cal.App.4th 1599, 1612.) Furthermore, "when a plaintiff appeals from a judgment to obtain review of a trial court's discovery orders, the plaintiff 'must "show not only that the trial court erred, but also that the error was prejudicial"; i.e., the plaintiff must show that it is reasonably probable the ultimate outcome would have been more favorable to the plaintiff had the trial court not erred in the discovery rulings. [Citation.]' [Citation.] An appellant must 'show that the error was prejudicial [citation] and resulted in a "miscarriage of justice" [citation].' [Citation.]" (*Property Reserve, Inc. v. Superior Court* (2016) 6 Cal.App.5th 1007, 1020.)

"The decision whether to grant a continuance under . . . section 437c, subdivision (h), is reviewed for an abuse of discretion." (*Jade Fashion & Co., Inc. v. Harkham Industries, Inc.* (2014) 229 Cal.App.4th 635, 643.) Nonetheless, any error in failing to grant a request for a continuance "is reversible only if [said] error . . . was prejudicial." (*Freeman v. Sullivant* (2011) 192 Cal.App.4th 523, 527; see § 475 ["No judgment, decision, or decree shall be reversed or affected by reason of any error . . . , unless it shall appear from the record that such error . . . was prejudicial, and also that by reason of such error . . . , the said party complaining or appealing sustained and suffered substantial injury, and that a different result would have been probable if such error . . . had not occurred or existed. There shall be no presumption that error is prejudicial, or that injury was done if error is shown."].)

Even assuming, arguendo, the court erred, we cannot conclude there was a reasonable probability TMD's summary judgment motion would have been defeated:

plaintiffs failed to produce evidence demonstrating former Duche and/or Dole Food were engaged in the business of manufacturing, designing, and/or selling wet augers.

## **DISPOSITION**

The judgment of the superior court entered on an order granting summary judgment is affirmed. Costs on appeal are awarded to defendant T.M. Duche Nut Co., Inc.

DETJEN, Acting P.J.

WE CONCUR:

MEEHAN, J.

DE SANTOS, J.

27.